SIDNEY STEVENS ET AL., APPELLANTS, v. SOUTH OGDEN LAND, BUILDING & IMPROVEMENT COMPANY ET AL., RESPONDENTS.

CORPORATIONS—OFFICERS—ACTION FOR FRAUD—PARTIES—RECEIVERS.

1. When the same persons, officers of several corporations, form a fraudulent design to use the property and credit of such corporations for their own advantage, to the injury of the other stockholders, and do fraudulent acts in carrying out such design, all the parties affected by such acts are proper parties to a complaint based upon such fraudulent design. The persons perpetrating the fraud, and all others whose gains or losses are traceable thereto, are proper parties to an action based upon fraud.

2. When a fraudulent conspiracy is the common point of litigation, the conspirators and all persons affected by the fraud are proper parties to a suit based upon it.

3. When the business of corporations is mismanaged, and their property is misappropriated by their officers, and such mismanagement and misappropriation is likely to continue, courts of equity will appoint receivers for them.

(No. 736.    Decided December 9, 1896.)

Appeal from the Second district court, Weber county, Hon. H. H. Ralapp, *Judge.*

Action by Sidney Stevens and others against the South Ogden Land, Building & Improvement Company and others, to set aside conveyances and for the appointment of a receiver.    From a judgment sustaining the demurrer to the complaint, plaintiffs appeal.    *Reversed.*

*L. R. Rhodes,* for appellants.

*Evans & Rogers,* and *A. G. Horn,* for respondents:

Sec. 3220 Compiled Laws '88, provides that certain causes of action may be united in the same complaint, but they all must belong to one only of certain classes, *and must affect all the parties to the action and must be separately stated.*    The California code is the same. III Deering's Annotated Code, sec. 427 and note.

If the pleading does not conform to this requirement a demurrer will lie.    *Nev. Canal Co.* v. *Kidd,* 43 Cal. 180; *White* v. *Cox,* 46 Cal. 169.

This ground of demurrer is well taken.    *Bryce Gray* v. *Rothschild,* 112 N. Y. 668; *Johnson* v. *Kirby,* 65 Cal. 482.

We respectfully contend that as each defendant company is a separate and distinct legal entity, and has no interest in the controversies relating to the other defendant companies, there was a misjoinder of parties defend-

ant as set out in the demurrer. Bliss Code Plead., § 110 and 110a; Story Eq. Plead., § 271 to 278; *Preshaw* v. *Dee,* 6 Utah 360; *Bryce Gray* v. *Rothschild,* 112 N. Y. 668.

ZANE, C. J.:

The court below having sustained a demurrer to the complaint, and plaintiffs having failed to amend, the court entered a judgment dismissing the action, from which the plaintiffs have taken this appeal.

The complaint contains numerous allegations, among which are the following: That the South Ogden Land, Building & Improvement Company was incorporated on the 18th day of April, 1892, with authority to buy and sell real estate, build roads, parks, hotels, railways, boulevards, pleasure resorts, and do a general contracting and building business, to construct water ditches, canals, aqueducts, reservoirs, and lay and construct water works, and to build power dams for propelling machinery, and everything necessarily incident to the transaction of such business; that the business was required to be conducted according to the articles of incorporation, and its by-laws; that the number of shares in the company were 5,000, of which Sidney Stevens subscribed for 1,646 shares, Sidney O. and Frank J. Stevens 10 shares each, Solomon C. and William J. Stephens 1,666 shares each, and David Kay 2 shares; that the capital stock of the corporation consisted of numerous lots and tracts of real estate, described in the complaint; that it was further provided that Sidney Stevens, William J. Stephens, Solomon C. Stephens, Sidney O. Stevens, Frank J. Stevens, and David Kay should be directors until the first Monday in May, 1893, and until the election and qualification of their successors; that Sidney Stevens should be president, Sidney O. Stevens secretary, Frank J. Stevens treasurer, and William J. Stephens vice president. It was further alleged that the

South Ogden Mercantile Company, on the same day, was also incorporated; that the object of this incorporation was a wholesale and retail mercantile business, and the acquisition of such land as might be essential to the business; that the capital stock of the corporation was divided into 250 shares, of which Sidney Stevens subscribed for 73 1-3 shares, Frank J. and Sidney O. Stevens 5 shares each, William J. and Solomon G. Stephens 83 1-3 shares each; that the officers of the corporation consisted of five directors, president, vice president, secretary, and treasurer; that, until the meeting of the stockholders on the first Wednesday in May, 1893, and the election and qualification of officers thereto, the board of directors should be Sidney Stevens, Solomon C. and W. J. Stephens, and Frank J. and Sidney O. Stevens; that Sidney Stevens should be president, William J. Stephens vice president, Sidney O. Stevens secretary, and Frank J. Stevens treasurer; that the capital stock consisted of real estate, described in the complaint. The plaintiffs further alleged that the South Ogden Clay & Manufacturing Company was also incorporated on the same day; that the purpose of the corporation was the manufacture of brick, tiling, sewer pipe, pottery, the erection and operation of flouring mills, the manufacturing of tinware, the erection and operation of woolen mills, manufacture of wagons and other vehicles and farming implements, and the erection and operation of iron foundries, glass factories, and manufacture of wooden wares; that the capital stock of this corporation was divided into 5,000 shares, of which Solomon C. and W. J. Stephens subscribed 1,666 shares each, Sidney O. Stevens 1,661 shares, and Frank J. and Sidney Stevens 2 shares each; that the officers of the corporation consisted of a board of five directors, a president, vice president, secretary, and treasurer; that until the meeting of the stockholders on the

first Tuesday in May, 1893, and the election and qualifica-
tion of officers, the directors should be Solomon C. and
William J. Stephens, and Sidney O., Frank J., and Sidney
Stevens; that said Solomon C. Stephens should be presi-
dent, Sidney Stevens vice president, Sidney O. Stevens
secretary, and Frank J. Stevens treasurer; that the cap-
ital stock consisted of all the title and interest of William
J. Stephens and Solomon C. Stephens to and in a certain
option contract for certain lands described in the com-
plaint.    Plaintiffs also alleged that, in May, 1892, the
South Ogden Water Company was incorporated, with
authority to purchase water, to construct waterworks for
South Ogden and a portion of Ogden City, and also to
acquire and hold the necessary real and personal prop-
erty, and to sell the same when necessary or desirable;
that its capital stock was divided into 5,000 shares, of
which Sidney Stevens subscribed for 1,646 shares, Solo-
mon C. and William J. Stephens 1,666 shares each, Sidney
O. and Frank J. Stevens 10 shares each, and David Kay 2
shares; that the capital stock of this corporation con-
sisted of the right to the waters of certain creeks and
reservoirs mentioned in the complaint.    The plaintiffs
further alleged that the four corporations named were
organized to prosecute one enterprise, and that they were
to be, in effect, subject to one management, and that their
business became so intermingled and connected that it
was necessary to make them all parties to the same
action; that all of the subscribers still own their stock,
with the exception of one share assigned to John J. Hill,
and a few shares assigned to Paul Beus.    Plaintiffs fur-
ther allege that Sidney Stevens turned over to the South
Ogden Mercantile Company, soon after its organization,
in payment for his stock, a stock of goods of the value of
$14,000, and that he placed to the credit of the South
Ogden Land, Building & Improvement Company $10,000

in payment for stock issued; that, after the organization of said corporations, Solomon C. Stephens became general manager of the business of the South Ogden Clay & Manufacturing Company, and William J. Stephens of the South Ogden Land, Building & Improvement Company, and Sidney O. Stevens of the business and affairs of the South Ogden Mercantile Company; that Solomon C. Stephens and William J. Stephens represented to these plaintiffs that they were interested in a large number of building contracts in various parts of the city of Ogden, Park City, Heber City, and other places in Utah territory, and that such business had been entered into by them under the firm name of Stephens Bros., but that they would turn over to the South Ogden Land, Building & Improvement Company all benefits arising from said contracts, and that the goods and trade connected with said building operations should go to the benefit of the South Ogden Mercantile Company, and that all pay which they were to receive for the construction of such buildings should be paid into the treasury of the said South Ogden Land, Building & Improvement Company, in consideration of certain credits, to which proposal plaintiffs agreed; that thereupon William J. and Solomon C. Stephens began to use, in such building operations, the $10,000 of credit in favor of the South Ogden Land, Building & Improvement Company placed there by plaintiff Sidney Stevens, and also began to use the $14,000 worth of goods and merchandise of the South Ogden Mercantile Company, and they also began to purchase, from various firms in Ogden City and the East, goods, wares, and merchandise, to be used by them in and about said building operations; that, about the 1st day of September, 1892, plaintiffs ascertained that William J.and Solomon C. Stephens had drawn the full amount of the $10,000 placed to the credit of the South Ogden Land, Building & Improvement

Company, and that they had incurred obligations against that company to the extent of about $17,000, all of which, to the amount of about $20,000, had been used by S. C. and W. J. Stephens in the execution of said contracts, and, in addition thereto, they drew from the stock of merchandise about $10,000, and, besides this amount of about $30,000, the said S. C. and W. J. Stephens had also contracted debts against the South Ogden Land, Building & Improvement Company to the amount of about $17,000; that, upon their representations, the last-named company borrowed the sum of $15,000, and gave mortgages to secure the same on all of the property of the four corporations; that the said S. C. and W. J. Stephens refused to turn over any part of the proceeds to said companies, or either of them, and by means of force and violence took possession of the offices of the companies, and ejected plaintiffs therefrom, and held the same. The plaintiffs further alleged, in their complaint, that said W. J. and S. C. Stephens have a majority of the stock in each of the four corporations; that they held elections of stockholders, and did not elect plaintiffs, or either of them; that the directors elected, intending to defraud plaintiffs, and to render their stock in the companies absolutely worthless, and for the purpose of transferring, in the end, all of the property of the said corporations to their own private use, entered upon the books of said corporations various false entries, by which said Solomon C. and William J. Stephens were credited with false and fictitious credits; that they caused to be recorded, on the records of Weber county, numerous mortgages and trust deeds, in favor of said S. C. and W. J. Stephens, on the property of said corporations, while they were indebted to the companies, and that they are still so indebted; that said mortgages and deeds of trust were given without any consideration, and upon a fraudulent understanding and conspiracy

between said directors; that the defendants have sold the property of the said companies, and the proceeds thereof have been converted to the use of S. C. and W. J. Stephens. The plaintiffs allege numerous other fraudulent designs and conspiracies of the defendants, to the injury of the plaintiffs, by means of which the four companies aforesaid have apparently been denuded and divested of their property, so that the purposes of their creation cannot longer be prosecuted and carried out. And, finally, the plaintiffs allege that, by means of the conspiracies and acts alleged in their complaint, they have been defrauded of $36,000, and that they never received anything from their investments or said corporations, and, further, that the defendants refuse to consult with plaintiffs, or to pay any attention to their requests and demands, or to respect their rights. The plaintiffs prayed the court to appoint a receiver, with power to take possession of all the property, books, and accounts due or to become due to said corporations, and with authority to bring all necessary suits to obtain the possession of the books, property, and evidences of indebtedness belonging to them, and to set aside all fraudulent conveyances, and require accountings, and, generally, to take charge of and wind up the business thereof.

Defendants demurred to the plaintiffs' complaint on two principal grounds: (1) Because it was multifarious,—that distinct and independent matters were blended; (2) that there was a misjoinder of parties as co-defendants. The immediate object sought by the complaint was the appointment of a receiver for the four corporate defendants, and, ultimately, compensation for the loss caused by the mismanagement and fraud of the defendants in conducting the business, disposing of the property, and using the credit of the said corporate defendants. It appears from the complaint that all the other parties to

the action were owners of stock issued by the respective corporations, and that they were organized and intended to be used as instrumentalities in the prosecution of a general design,—that it was believed the enterprises contemplated could be more successfully carried out by the four corporations than by a less number. It further appears that a fraudulent design and conspiracy of the defendants, who are natural persons, caused losses to the corporate defendants, as well as the plaintiffs; that the defendants perpetrating the fraud affected injuriously all the other parties; that the losses of the other parties are traceable to and centered in the fraud of the natural defendants. The plaintiffs base the right to the remedy they ask on that fraud.

Assuming the allegations of the complaint to be true, as we must for the purposes of the demurrer, the defendants William J. Stephens, Solomon C. Stephens, David Kay, John J. Hill, Paul Beus, and J. O. Stevens formed a fraudulent design, and entered into a conspiracy to use the property and credit of the corporations named for their own benefit, to the injury of the other parties; and, in prosecuting that purpose, they did a number of acts by which the interests and rights of the other parties were affected. Therefore, the parties doing the fraudulent acts, and all other persons, natural or legal, were proper parties to the action to investigate the entire fraud, and the transactions connected therewith, and to ascertain the respective rights and interests of the parties, that such orders and such a decree might be made as would secure the rights and interests of all those affected by the fraud; and this, though some of the defendants might have separate and distinct defenses. The ends of distributive justice manifested by this complaint call for a liberal application of the flexible principles of equity. The gist of the action, as set forth in the

complaint, is the fraud and mismanagement of defendants William J. Stephens, Solomon C. Stephens, J. O. Stevens, David Kay, John J. Hill, and Paul Beus in controlling, disposing of, and appropriating the property of the corporations named, transacting their business, and using their credit, by which the rights and interests of all the other parties were affected. In this there is one common point of litigation. That being so, they were all proper parties; and, for the same or similar reasons, the complaint cannot be regarded as multifarious. *North* v. *Bradway*, 9 Minn. 183 (Gil. 169); *Donovan* v. *Dunning*, 69 Mo. 436; *Fellows* v. *Fellows*, 4 Cow. 682; *Bobb* v. *Bobb*, 76 Mo. 419; *Williams* v. *Bankhead*, 19 Wall. 563; Phil Code Pl. § 453; Cook, Stock, Stockh. & Corp. Law, § 738; Story, Eq. Pl. (9th Ed.) § 539.

It clearly appears, from the allegations of the complaint, that the natural persons named as defendants were directors and officers of the four corporations mentioned, and that they so mismanaged the business of the companies as to cause the plaintiffs, who were stockholders, great loss, and that they will sustain further loss unless a receiver is appointed. We are of the opinion that the order sustaining the demurrer and the judgment dismissing the action were erroneous. The judgment appealed from is reversed, and the cause is remanded, with directions to set aside the order sustaining the demurrer.

BARTCH and MINER, JJ., concur.