(February 10, 1906.)

## ADIN M. HALL et al., Appellants, v. J. W. NIEUKIRK et al., Respondents.

[85 Pac. 485.]

APPOINTMENT°OF A RECEIVER—ALLEGATIONS OF THE COMPLAINT—WHEN RECEIVER WILL BE APPOINTED.

1. Upon a proper showing a receiver· will be appointed for a corporation *pendente lite*.

2. Under the provisions of subdivisions 5 and 6 of section 4329 of ·the Revised Statutes, a receiver will be appointed where it is shown that the corporation is insolvent or in imminent danger of insolvency, and in all cases where receivers have heretofore been appointed by the usages of the courts of equity.

3. Under the allegations of the complaint, *held* that the court erred in refusing to appoint a receiver.

4. Under our statute an appointment of a receiver does not necessarily cause a dissolution of the corporation, unless the court so directs; the receiver may be appointed simply to manage the affairs of the company during the pendency of the litigation.

5. Upon the application of a stockholder where it is .shown that the directors and officers of the corporation are mismanaging its affairs for their own personal advantage and gain, and where it is shown that the profits of the business of the corporation are being absorbed by such mismanagement in paying the salaries of favorite

employees, whose services are not necessary to the proper conduct of the business of the corporation, and where gross mismanagement is shown, which if continued would necessarily result in insolvency of the corporation, a receiver should be appointed.

(Syllabus by the court.)

APPEAL from the District Court of Fourth Judicial District for Elmore County. Hon. Lyttleton Price, Judge.

Application for the appointment of a receiver, which was denied by the trial judge. *Reversed.*

E. M. Wolfe and E. J. Dockery, for Appellants.

"A receiver of a corporation upon proper application by a proper party, may be appointed, when upon application of a stockholder it is shown that the directors and officers of the corporation are mismanaging its affairs, as for their own personal advantage and gain." (Smith on Receivership, p. 395, sec. 225, subd. c; *Haywood v. Lincoln Lumber Co.*, 64 Wis. 639, 26 N. W. 184; *Supreme Lodge Co. O. of I. H. v. Baker*, 134 Ind. 293, 33 N. E. 1128, 20 L. R. A. 210; *Wayne Pike Co. v. Hammons*, 129 Ind. 368, 27 N. E. 487.) "When the majority stockholders are clearly violating the chartered rights of the minority and putting their interests in imminent danger," a receiver will be appointed by a court of equity. (Smith on Receivership, p. 362, sec. 225, subd. j; *State v. Second Judicial District Court*, 15 Mont. 324, 48 Am. St. Rep. 682, 39 Pac. 316, 27 L. R. A. 392.)

Minority stockholders may secure the appointment of a receiver pending investigation of gross fraud by the majority stockholders. (*State v. Second Judicial District Court*, 15 Mont. 324, 48 Am. St. Rep. 682, 39 Pac. 316, 27 L. R. A. 392.)

When the conduct of the officers of a corporation is satisfactorily established as fraudulent it is not only proper, but it is the duty of the court to wrest from such officers the management of the company and place the company in charge of a receiver. (Smith on Receivership, p. 369, sec. 228, note 2;

*Nichols v. Perry Pat. Arm. Co.,* 11 N. J. Eq. 126; *Attorney General v. Bank of Columbia,* 1 Paige, 511.)

Fraud and collusion on the part of the officers and directors of a corporation which may result in danger of the loss of the property of such corporation constitute sufficient grounds for interference of a court of equity and the appointment of a receiver over its property and business. (Smith on Receivership, p. 366, sec. 227; *Miner v. Belle Isle Ice Co.,* 93 Mich. 97, 53 N. W. 218, 17 L. R. A. 412; *Haywood v. Lincoln Lumber Co.,* 64 Wis. 639, 26 N. W. 184; *Hedges v. Paquett,* 3 Or. 77; *Ellis v. Ward,* 137 Ill. 509, 25 N. E. 530.)

If possession of defendants is obtained by fraud, or that the income is in danger of loss from neglect, waste or misconduct justifies appointment. (*Gilbert v. Block,* 51 Ill. App. 516.) Mismanagement, diversion of funds, applying assets to benefit of officers are grounds for receiver. (*In re Lewis,* 52 Kan. 660, 35 Pac. 287.) "When the business of a corporation is mismanaged and its property misappropriated by its officers, and such mismanagement is likely to continue, courts of equity will appoint a receiver for it." (*Stevens v. South Ogden Land etc. Co.,* 14 Utah, 232, 47 Pac. 81.)

Conspiracy of officers to dissipate corporate funds and to fraudulently absorb and apply its assets to the individual benefit of such officers are grounds for appointment of receiver. (*In re Lewis,* 52 Kan. 660, 35 Pac. 287.) There may be very exceptional circumstances under which a court of equity may appoint a receiver and wind up a corporation at the suit of a stockholder, even in the absence of a statute. (2 Clark & Marshall on Corporations, p. 1713, sec. 556; *Sternberg v. Wolf,* 56 N. J. Eq. 389, 67 Am. St. Rep. 494, 39 Atl. 397, 39 L. R. A. 762; *Dickerson v. Cass County Bk.,* 95 Iowa, 392, 64 N. W. 395; *Wallace v. Pierce-Wallace Pub. Co.,* 101 Iowa, 313, 63 Am. St. Rep. 389, 70 N. W. 216, 38 L. R. A. 122; *Miner v. Belle Isle Lce Co., supra; Supreme Sitting O. I. H. v. Baker,* 134 Ind. 293, 33 N. E. 1128, 20 L. R. A. 210, and innumerable other cases.) *Haywood v. Lincoln Lumber Co. et al.,* 64 Wis. 639, 26 N. W. 184, holds squarely that receiver may be ap-

pointed when company is being mismanaged and assets in danger of being lost to stockholders. *Miner v. Bell Ice Co., supra,* holds when fraud, abuse of trust or misappropriation of corporate funds, at the instance of a single stockholder a court of equity will appoint a receiver. Likewise *Supreme Sitting Order of Iron Hall v. Baker,* 134 Ind. 293, 33 N. E. 1128, 20 L. R. A. 210; Smith on Receivership, p. 382, sec. 233, 385, subd. e; *Brandt v. Allen,* 76 Iowa, 50, 40 N. W. 82, 1 L. R. A. 653.

W. C. Howie, for Respondents.

Practically all the decisions, Idaho included, are to the effect that receivers will not be appointed except in those cases expressly authorized by statute. Courts, before judgment, can appoint receivers only in those cases mentioned in section 4329, and then only in particular cases. (*Sweeny v. Mayhew,* 6 Idaho, 455, 56 Pac. 85, and see the numerous cases hereinafter cited.)

Where a receiver *pendente lite* is sought, it must be conclusively shown that there is great danger that the property will be lost by the delay till the cause can be tried. In sustaining the above principles see the following, among other authorities: High on Receivers, sec. 288; *Coquard v. National Linseed Oil Co.,* 171 Ill. 480, 49 N. E. 563; *People v. Weighley,* 155 Ill. 491, 40 N. E. 300; *People v. District Court,* 33 Colo. 293, 80 Pac. 908; *Neall v. Hill,* 16 Cal. 145, 76 Am. Dec. 508; *French Bank Case,* 53 Cal. 495; *Smith v. Superior Court,* 97 Cal. 348, 32 Pac. 322; *State Investment Ins. Co. v. Superior Court,* 101 Cal. 135, 35 Pac. 549; *Fischer v. Superior Court,* 110 Cal. 129, 42 Pac. 561; *Jones v. Bank of Leadville,* 10 Colo. 464, 17 Pac. 272; *Mason v. Supreme Court of Equitable League,* 77 Md. 483, 39 Am. St. Rep. 433, 27 Atl. 171; *Espuela Land etc. Co. v. Bindle,* 5 Tex. Civ. App. 18, 23 S. W. 819; *State v. Murphy,* 118 Mo. 7, 25 S. W. 95.

The necessity to bring suit to recover property of the corporation is no ground, as the stockholders themselves can sue as well as a receiver. (*Hallenborg v. Cobre Grande Copper Co.* (Ariz.), 74 Pac. 1052.)

The court has no power to appoint a receiver, except upon express statutory authority, because of internal dissension or bickerings. (*Republican etc. Mines Co. v. Brown,* 58 Fed. 645, 7 C. C. A. 412, 24 L. R. A. 776.) A court of equity has no power to remove the officers of a corporation, unless expressly given it by statute. Many states have conferred that power on them, hence the decisions to that effect, but ours has not. (3 Clark & Marshall on Corporations, pp. 2039 (4), 2044-2048; *Neall v. Hill,* 16 Cal. 145, 76 Am. Dec. 508.)

SULLIVAN, J.—This is an appeal from an order of the judge of the fourth judicial district court denying the application of the appellants for the appointment of a receiver for the Charles R. Kelsey Company, Limited, a corporation organized under the laws of the state of Idaho, and doing a general merchandising business in Elmore county. The application was based on the amended complaint in the action. All of the allegations of that complaint were admitted by the respondents, as they did not by answer or otherwise deny any of them at the time said application for a receiver was presented and passed upon by the judge. Among many of the allegations of the complaint we find the following: That Charles R. Kelsey, on or about February 1, 1901, owned and operated a general merchandise store in Mountainhome, said county, and that on or about said day was organized the defendant corporation; that the appellants were inexperienced in the merchandising business and that said Kelsey represented to them that his merchandising house was doing a prosperous business and that the new corporation would make large profits, and guaranteed to the plaintiffs or to the appellants, and to all owners of preferred stock an annual dividend of ten per cent, and to that end he caused the stock of said corpora-

tion to be issued in preferred and common, $25,000 of each.
All of the preferred stock he sold to plaintiffs and others, who
paid cash therefor; that plaintiffs were led to believe that said
preferred stock would receive a ten per cent dividend which
would be paid semi-annually, but as a matter of fact said arti-
cles of incorporation guaranteed said dividends only out of the
profits of the business before the common stock should share in
any part thereof; that only three semi-annual dividends had
been paid and that no dividends whatever had been paid on
said preferred stock since August, 1902; that in fixing the value
of the store and general assets of said Kelsey which went to
make up the property transferred to said corporation, there was
considered and valued a large number and amount of open ac-
counts to said Kelsey, and he guaranteed said accounts should
be paid within one year after the incorporation of the said
company, and as security for such guaranty it was agreed
that $15,000 of the common stock should remain and be the
property of the corporation and should not be delivered to said
Kelsey or to any other person until all of said open accounts
should be paid to said corporation; that thereafter a consid-
erable part of said accounts were paid, and by proper resolu-
tion of the board of directors of said corporation, the presi-
dent and secretary were directed to issue to said Kelsey $10,-
000 worth of the common stock and to retain as the property
of the company the remaining $5,000 worth of common stock;
that at that time said Kelsey was president of the company,
and instead of issuing $10,000 as directed, he caused to be
issued $5,000 additional of the said common stock, thus de-
frauding the plaintiffs out of said common stock; that there
is yet due and unpaid a large amount upon said open accounts
so guaranteed by Kelsey; that thereafter said Kelsey trans-
ferred said $5,000 worth of common stock so fraudulently is-
sued to him to his wife Altha B., who took the same with full
knowledge that said stock was fraudulently issued; that on
or about the twenty-fourth day of June, 1904, said Kelsey
died, and that on or about the ninth day of July, 1904, the
defendant, J. W. Nieukirk, was elected president of the said

company to succeed the deceased; that he was elected in opposition to the votes of the plaintiffs who were members of the board of directors; that said Nieukirk is a practicing physician and is wholly unacquainted with the mercantile business; that he was a particular friend of the said Kelsey, deceased, and his wife, and was their family physician, and that he always sustained them at the meetings of the stockholders and of the directors of said corporation; that among the duties of the secretary and treasurer is that of preparing every month for the regular monthly meeting of the board of directors a statement in writing showing the present financial condition of the company, the business transacted during the preceding month, the cash taken in and paid out and the amount due and owing to the company; that said Nieukirk has refused to allow the secretary and treasurer to prepare and present to said board the said monthly reports, although the same has often been requested by the board of directors; that on the seventeenth day of November, 1904, the directors, believing that it was for the best interest of the company and stockholders, ordered and directed an inventory of the property of said company to be taken so that they might know how the company stood financially, and for that purpose they employed one Wilterding, an experienced merchant, whereupon defendant Nieukirk then and there refused to allow him or any person to make an appraisement of the company's property; that said Nieukirk, Altha B. and Altha R. Kelsey and George C. Nichols have conspired together for the purpose of defrauding said corporation and the plaintiffs herein and other stockholders, and in furtherance of said conspiracy and fraud said Nieukirk has refused to preside over the regular monthly meetings of the board of directors, although personally present; that he failed to entertain motions made for the purpose of adjourning such meetings; that he has left meetings of the board for the purpose of reducing the number so that there would be no quorum present, thereby forcing an adjournment; that at various meetings of said board he has become very offensive, abusive and insulting to the mem-

bers of the board; that he is at enmity with every member of
the board, except the two Kelseys and Nichols; that on the
seventeenth day of December, 1904, while the board of direc-
tors was in session in the company's store building, they re-
quested their counsel to appear before them, for the purpose
of counseling and advising them, whereupon said Nieukirk
refused to allow said counsel to enter the building, declaring
that he would put him out by force and violence if he at-
tempted to enter; that he refused to abide by their instruc-
tions or to carry out their orders; that he manages and oper-
ates the business of the said company in the interest of him-
self and of the said Kelsey's family to the exclusion of the
other stockholders; that he draws from the funds of said
company the sum of $150 per month for his said services,
which instead of being a benefit are an injury to the company
because of his inexperience and misconduct; that he employs
the Kelsey family in said store; that the office help alone con-
sists of four persons at a monthly cost of $500; that in the
sales department he employs four persons at a monthly salary
of $450; that in the delivery department he employs a man
and a boy at a monthly cost of $100; that the work of the office,
including the superintending of the buying, can be done by
two persons at a cost not to exceed $175 monthly, and that
for the five months next preceding the election of said Nieu-
kirk as president, the office force consisted of two persons for
three months at a salary of $150; and for two months at a
salary of $185; that the total cost of help for said company
should not exceed $550; that the board of directors have often
directed that the purchases of the company should be made on
a cash basis. Notwithstanding the repeated orders of the
board to that effect, at the close of the year ending January
31, 1904, the said Kelsey, deceased, had so managed the com-
pany's business that it was indebted to wholesale houses and
firms in the sum of $16,000, all of which was overdue; that
said Kelsey and Nieukirk urged the board of directors to con-
solidate the indebtedness of the company and place it with
one bank or person and that the time for payment thereof

be extended; that in so doing the finances of the company would be in such condition that all purchases thereafter could be made for cash and all bills discounted, thereby making a great saving to the company. Relying upon such representations the appellants joined with the defendants in an order directing said Kelsey to secure a loan of $16,000; that thereafter said Kelsey became ill and unable to attend to said matter, and that said Nieukirk and others negotiated a loan of $16,000, which loan was secured by mortgage on the company's property; that said loan was to be paid monthly in payments of $1,000; that four of said monthly payments only had been made; that all other of said monthly payments are now past due and remain unpaid; that said Nieukirk instead of conducting said business upon a cash basis in the purchase of goods, has so managed and conducted the business that said company now owes $11,000 for goods purchased which amount is overdue; that said Nieukirk and Altha B. Kelsey, in furtherance of the conspiracy, transferred to Altha R. Kelsey, daughter of Altha B., without consideration, a number of the shares of the capital stock of said company, and so transferred to the said George Nichols five shares of the capital stock thereof; that said transfers were made for the sole and only purpose of enabling said Kelsey and Nichols to become directors of said company that they might assist Nieukirk and Altha B. Kelsey in said conspiracy; that at the annual meeting of the stockholders on the 16th of January, 1905, the plaintiffs and Altha B. Kelsey were elected directors of said company, but that said Nieukirk, Altha B. and Altha R. Kelsey and Nichols, in furtherance of said conspiracy and after said election and without further ballots being taken, during a recess of said meeting and in pursuance of said conspiracy, did fraudulently and unlawfully remove four of the ballots which had been cast prior to said recess, and in their place substituted other ballots and that said ballots were counted by said defendants on the accumulated plan; that by reason of said fraudulent change of said ballots the defendants, Nieukirk, Kelseys and Nichols were de-

clared elected as directors of said company in fraud of said
company and of the rights of plaintiffs. That after said
fraudulent election the four persons mentioned elected said
Nieukirk president, Altha B. Kelsey vice-president and George
C. Nichols, secretary and treasurer of said corporation; that
no meeting of the board of directors has been held since the
annual meeting of January, 1905; that no monthly statement
of the financial condition of the company has been rendered
since said annual meeting, and none was made at that time
and that said defendants had refused to make such report,
in violation of the by-laws of the company. That Nieukirk
had taken from said company the sum of $1,800 for one
year's service as president of the company; that said fraudu-
lently elected officers have conspired together to defraud the
appellants and other stockholders of any and all profits of said
business, and have fraudulently denied the plaintiffs and other
stockholders from all knowledge or participation in the con-
duct of such business; that in furtherance of such conspiracy
said defendants have paid to themselves and their favorites
salaries way beyond the value of the services rendered by
them to the said company, in order to consume the profits and
substance of the said company; that while the business of
the said company now and for several months last past is less
than one-third of the business done by said company before
the incompetent management of Nieukirk and the other de-
fendants, they have continued to employ an unnecessary force
to conduct the business of said company, and have increased
the salaries of the said Kelseys and Nichols, and that the af-
fairs of the company have been so recklessly, fraudulently
and incompetently managed that the salary expense thereof
ranges from $722 to $959 per month, and that the total ex-
pense of conducting the business is from $1,100 to $1,500 per
month, and that the average monthly sales do not exceed $5,-
000 per month; that to give the impression of doing a large
business, credit is indiscriminately extended to people of little
or no financial responsibility, and accounts of long standing
are left uncollected so that about two-thirds of the total out-

standing bills of said company, aggregating upward of $20,-
000 are uncollectible and that said misconduct, mismanage-
ment and extravagance in the affairs of said company are
deliberately and intentionally made on the part of said Nieu-
kirk, and in furtherance of a purpose and conspiracy to di-
vert the funds and apply the assets to their own benefit,
whereby plaintiffs are defrauded, and the said company is
in imminent danger of becoming insolvent if it is not in fact
already so; that said $5,000 of common stock was to become
the property of the stockholders in the event Kelsey failed
.to collect or pay outstanding accounts, aggregating over $2,-
300, and that said stock was fraudulently issued by said Kel-
sey. and assigned to the defendant Altha B. Kelsey, and that
said accounts have not been collected and have been fraudu-
lently charged to the account of said C. R. Kelsey months
after his death, and that the same were uncollectible from
his estate and that said accounts were so charged for the pur-
pose of consummating the conspiracy to defraud plaintiffs
and said stockholders of the $5,000 worth of common stock;
that on October 31, 1904, said Altha B. Kelsey owed said
company the sum of $758.14 on account, and had the same
transferred to the account of C. R. Kelsey, deceased; that said
transfer was caused to be made by the said Nieukirk, Kelseys
and Nichols with the full knowledge that said C. R. Kelsey
was dead and had left no estate, and that said account was
utterly worthless as an account against his said estate; that
said transfer was made expressly for defrauding plaintiffs
and other stockholders out of said sum of $758.14; that said
Altha B. Kelsey now disclaims said debt and obligation and
refuses to pay the same; that no redress can be obtained .by
plaintiffs in an action in the name of the corporation, as its
officers and directors are parties to and direct beneficiaries of
the fraud practiced upon plaintiffs, and they neglect and re-
fuse to require said Altha B. Kelsey to pay said sum or any
part thereof or to require her to assign and transfer to the
company said $5,000 worth of common stock so fraudulently
acquired by her; that prior to the organization of the said cor-

poration as an inducement and protection to the owners and holders of the said preferred stock, it was understood and agreed by and between them and all owners of stock that the holders of preferred stock should have the privilege, power and authority to elect the secretary and treasurer and to fix his salary, and to that end a by-law was adopted as follows: "The office of secretary and the office of treasurer may be held by the same person, both offices to be filled and the salary fixed by a majority vote of the preferred stockholders at the time of the stockholders' annual meeting. He or they shall hold the office for one year. In case of a vacancy by resigna-. tion, disqualification or removal, the vacancy is to be filled in the same manner as the election."

That at the annual meeting of the stockholders in January, 1905, Nieukirk, Kelseys and Nichols, representing all the common stock and a very small minority of the preferred stock, against the will and without the authority or consent of the holders of the majority of the preferred stock, in further- ance of said conspiracy and in fraud of plaintiffs, so amended said by-law as to deprive the holders of preferred stock from so selecting the secretary and treasurer and that under such amended by-law and in pursuance of the fraudulent purpose aforesaid, voted for and elected or pretended to elect said Nichols secretary and treasurer, and thereafter employed him as a bookkeeper at a salary of $100 per month; that on ac- count of the unfriendly feeling existing between Nieukirk and the board of directors caused by the mismanagement and misconduct of the said Nieukirk, Kelseys and Nichols, and be- cause of the inexperience of said Nieukirk and his extrava- gant management in the conduct of the said business, the capital stock of said company is becoming impaired and en- dangered, and that said corporation is in imminent danger of insolvency and unless protected by order of the court will be- come entirely valueless; that plaintiff has no plain, speedy and adequate remedy at law.

The foregoing is the substance of the allegations of the com- plaint, none of which are denied by the respondents. That

being true, we think the allegations amply sufficient to warrant the court in appointing a receiver. The utter incompetency of Nieukirk is shown. A conspiracy is shown to exist between him and other of the directors to loot said corporation of all its profits in the mercantile business and of the profits of the company. Under his management large debts have accrued against the company and contrary to the order of the board of directors. Salaries of the officers and of the employees have been increased and employees not required by the business retained on the pay-roll. The business of the company has decreased from $15,000 a month to about $5,000. Credit has been indiscriminately given to the amount of about $20,000, much of which is absolutely worthless. Stock that belonged to said company has been fraudulently issued to the Kelsey family. A good account of $758.14 against Altha B. Kelsey has been transferred against a deceased man who left no estate in fraud of the rights of the stockholders. It appears that money was paid for the preferred stock, and a by-law was adopted giving the stockholders holding the preferred stock the right to elect the secretary and treasurer. This was fraudulently amended by said Nieukirk and his co-conspirators so as to permit the secretary and treasurer to be elected by themselves and against the interests of the stockholders who held the preferred stock, and it is admitted that if said corporation is not already insolvent, that insolvency stares it in the face. Notwithstanding all of those undenied allegations, it is contended by counsel for respondents that sufficient is not alleged to warrant a court of equity in granting a receiver, and that the appellants have a plain, speedy and adequate remedy at law. If the complaint does not contain allegations sufficient to warrant the appointment of a receiver, it would be most difficult to make allegations sufficient for that purpose. Under the provisions of subdivisions 5 and 6 of section 4329 of the Revised Statutes, the appointment of a receiver is authorized where a corporation is insolvent or in imminent danger of insolvency, and also in all other cases where receivers have heretofore been appointed by the usages of

courts of equity. The allegations are amply sufficient to show that said corporation is grossly mismanaged and is in imminent danger of insolvency. In *Gibbs v. Morgan*, 9 Idaho, 100, 52 Pac. 733, under section 4329 of the Revised Statutes, this court held that upon proper application a receiver would be appointed for a corporation *pendente lite*. The court said in that case: "As far as possible courts of equity should adapt their practice to the existing conditions of the business world and apply their jurisdiction to the changed conditions and cases arising thereunder, and should not too strictly adhere to forms and rules established under different circumstances and decline to administer justice and enforce rights for which there is no other remedy."

The supreme court of Montana in *State v. Second Judicial District Court*, 15 Mont. 324, 48 Am. St. Rep. 682, 39 Pac. 316, 27 L. R. A. 392, under a statute identical with section 4329, held that the court had jurisdiction to appoint a receiver; and that court, referring to the *French Bank Case*, 53 Cal. 550, says: "In the California case an important element in the decision as it appears was that the appointment of a receiver acted as a dissolution of the corporation," and says further, "the receiver is not to wind up the corporation under his appointment; he is simply to manage the affairs of the same while charges of the most outrageous frauds of the managers and officers are being investigated in the trial of the action." So in the case at bar the appointment of a receiver does not act as a dissolution of the corporation. The receiver would only manage the affairs of the corporation during the investigation of the charges of conspiracy, incompetency and fraud.

In Smith on Receiverships, section 225, it is stated: "Where upon application of a stockholder it is shown that the directors and officers of the corporation are mismanaging its affairs as for their own personal advantage and gain," a receiver will be appointed; and "Where the majority stockholders are clearly violating the chartered rights of the minority and putting their interests in imminent danger," a receiver

will be appointed.   In section 228 it is said: "Where, however, the conduct of the officers of a corporation is satisfactorily established as fraudulent, it is not only proper but it is the duty of the court to wrest from such officers the management of the company and place the company in the charge of a receiver."

In *Gilbert v. Block,* 51 Ill. 516, it is held that if possession of the defendants is obtained by fraud, or that the income is in danger of loss from neglect, waste or misconduct, a receiver will be appointed upon proper application,  and in *Re Lewis,* 52 Kan. 660, 35 Pac. 287, that the mismanagement, diverting of funds, applying assets to the benefit of officers, are grounds for a receiver.   (See *Stevens v. South Ogden Land etc. Co.,* 14 Utah, 232, 47 Pac. 81.)   In *Ponca Mill Co. v. Mikesell,* 55 Neb. 98, 75 N. W. 46, it was held that a receiver would not be appointed merely because of difference of opinion between officers or holders of the majority of the stock as to proper policy of managing the corporate affairs, but that one would be appointed when it was shown that the officers and the holders of. a majority of the stock are fraudulently managing the corporate business, converting the property to their individual use, and abusing their powers to the injury of the other stockholders.   *Miner v. Belle Isle Ice Co.,* 93 Mich. 97, 53 N. W. 218, 17 L. R. A. 412, was a case something like the one at bar and furnishes an instance of a gross abuse of the trust.   It is there held that the law requires of the manager the utmost good faith in the control and management of the corporation as to the minority.   The court said: "It is the essence of the trust that it shall be so managed as to produce for each stockholder the best possible returns for his investment.   The trustee has so far absorbed all returns."   So in the case at bar it is shown that Nieukirk and his favorites have not only absorbed all of the returns, but are about to wreck the company.   (See Clark & Marshall on Corporations, sec. 556.)

In *Haywood v. Lincoln Lumber Co.,* 64 Wis. 639, 26 N. W. 184, the court holds that a receiver may be appointed when

the affairs of a corporation are being mismanaged and its assets be in danger of being lost to the stockholders. The rights of a majority of the board of directors or a majority of the stockholders to loot and mismanage the business of the corporation is not protected by our law simply because it is a corporation. Such rights are no more protected to a corporation than they are to a partner of a copartnership. In this age of trusts and corporations, the managers thereof must be held to as strict an accountability for the fair and honest conduct of the business as a partner conducting the business of a partnership. The allegations of the complaint require the appointment of a receiver, and the judge erred in not appointing one. His action in refusing to appoint a receiver is reversed and the cause remanded with directions to appoint one. Costs of this appeal are awarded to appellants.

Stockslager, C. J., concurs.

Ailshie, J., expresses no opinion.

### ON PETITION FOR REHEARING.

STOCKSLAGER, C. J.—Respondents in this case filed their petition for what is termed a limited rehearing, "with a view to the correction of what we think is an error in the order of the court directing that a receiver be appointed, and ask that said order be modified to permit respondents to answer the complaint in said cause and deny the allegations of said complaint, to the end that complete justice may be done." So says the petitioner. Again it is said: "Respondents now stand ready, and at all times have stood ready, to show the falsity of all the allegations of the complaint upon which a receiver is asked to be appointed, except the liability to insolvency, and to show that said liability is caused by the wrongful acts of the appellant."

As shown by the complaint in this action, the substance of which is embodied in the opinion, a number of reasons were enumerated why a receiver should be appointed to take charge of the property of this corporation and preserve it from waste,

and whether a direct charge of insolvency was alleged or not, the allegations were sufficient to show that the ultimate result -of the management would be insolvency. These allegations were met by a demurrer which was sustained by the learned trial judge; but this court was of the opinion that the showing was sufficient to warrant the appointment of a receiver under the provisions of subdivision 5 of section 4329 of-the Revised Statutes. It says a receiver may be appointed "when a corporation has been dissolved, or is insolvent, or in imminent danger of insolvency, or has forfeited its corporate rights."

Learned counsel for respondents says that his. time was too limited to prepare an answer and meet the issue at the time the application was set for hearing. Beyond doubt an application for an extension of time in which to prepare his answer would have been granted by the lower court, and the allegations of insufficiency, incompetency, with other more serious and far-reaching charges, were of a nature that should have been met by a positive denial other than by demurrer, which in effect admits the truth of the allegation, but denies that the plaintiff is entitled to the relief demanded.

As to respondents' right to answer in the lower court now, this court has nothing to say; that right is governed by statute.

We find no merit in the petition, and it is denied.

Sullivan, J., concurs.