JOHN J. KELLY vs. THE MAYOR AND CITY COUNCIL
OF BALTIMORE.

*Proceedings of the City Commissioner to Establish the Grade
lines of Streets in the City of Baltimore—Notice—Damages.*

From the terms of the Act of Assembly relating to that subject (1874, ch. 218,) as well as from the character of the work itself, the establishment or change of grade lines of streets in the City of Baltimore, is a matter wholly independent of the condemnation or opening of the same; and may be done at any time before such condemnation, or after it, and before the work of grading and paving is actually completed.

By ordinance No. 44, of 1874, of the Mayor and City Council of Baltimore, the City Commissioner was required before establishing or changing the grade of any street, to "give five days notice in three daily papers of the application made, and that he will appear on the premises on the day to be named in said notice, for the purpose of determining on such application." Application having been made for the change of grade of a portion of a street, the record of the proceedings thereunder showed that notice of the application had been duly advertised in three daily papers, and then sets forth that the "City Commissioner met the City Surveyor on the premises May 29th, 1882, at four o'clock, p. m., and adjourned until June 10th, 1882, at twelve o'clock, m., at the City Commissioner's office, and further adjourned until June 17th, 1882, upon which day the City Commissioner established the grade as follows," &c. HELD:

1st. That the records showed a compliance with the requirements of the city ordinance and of the statute under which it was passed.

2nd. That the City Commissioner when he attended on the premises, was not required to make up his mind and announce his determination then and there; and no other announcement of his determination was required than the recording of the grade, as finally calculated and determined on, in the record book kept in his office, to which all parties interested could have access.

3rd. That the final determination rested with the Commissioner alone, but it was not declared when or where he should make or announce it, and the failure to state the time of day and place of meeting, under the last adjournment did not vitiate the proceeding or make the grade illegal.

The owner of land abutting on a street in the City of Baltimore, which has been graded and paved in front of his lot, before said street had been legally condemned and opened as a public highway, cannot recover against the city as a trespasser, the costs he may be put to in filling up his land in order to utilize it for building lots upon said streets as thus graded and paved.

APPEAL from the Superior Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., STONE, MILLER, ROBINSON, and BRYAN, J.

*Michael A. Mullin*, for the appellant.

*Bernard Carter, City Solicitor*, for the appellee.

MILLER, J., delivered the opinion of the Court.

This suit was brought by the appellant on the 10th of January, 1885, against the Mayor and City Council of Baltimore to recover damages alleged to have been done to his land which abuts on Caroline street, by the grading and paving of that street in front thereof. The declaration avers that the city did this grading and paving wrongfully and without any warrant or authority of law, because that portion of this street on which the plaintiff's land abuts had never been lawfully condemned or opened as a public highway.

Caroline street is one of the streets laid down on Poppleton's Plat, but no attempt was ever made to condemn and open that part of it which lies between Townsend street

and North avenue, until the passage of a special ordinance for *that purpose* on the 12th of May, 1876. Under this ordinance, condemnation proceedings were taken, and after they had, as was supposed, been duly completed, the city passed Ordinance No. 93, of 1881, which directed this part of the street to be graded and paved, and that the expense thereof should be assessed upon the owners of property binding thereon. This latter ordinance is in the usual form of such ordinances passed since and under the Act of 1874, ch. 218. After the work had been done, and the assessments made out, the plaintiff in this suit, in connection with other property owners along the line of the street, filed a bill in equity to restrain the collection of the assessments made against them. In this bill the complainants averred that the paving ordinance of 1881 was prematurely passed and all the proceedings under it were illegal and void, because the previous condemnation proceedings were ineffectual, inasmuch as no compensation had ever been paid or tendered as the law requires, to a certain property owner through whose land the street passed, and from whom some of the complainants derived their title. That case came before this Court on appeal, and is reported in 62 *Md.*, 371. It was there decided that no paving ordinance like this could be validly passed under the Act of 1874 unless the street had been first validly " condemned, ceded, or opened as a public highway;" that the failure to pay or tender compensation to this property owner as required by the Constitution of the State, as well as by the laws and ordinances of the city, was a fatal defect in the condemnation under the ordinance of 1876; that consequently the paving ordinance of 1881 was without " legal sanction," and all proceedings under it, including the assessments in question, " were *ultra vires* and absolutely null and void." This Court accordingly affirmed the decree appealed from in that case, which made perpetual the injunction restraining the collection of these taxes or assessments.

Kelly *vs.* Mayor, &c., of Baltimore.

The result of this litigation was that the plaintiff was relieved from the paving tax, and that the work was done without any special expense to him, and paid for by the tax payers of the city generally. Not content with this, he now seeks to recover from the city damages which he alleges have been done to his property by the construction of this street. Now assuming (but *gratia argumenti* only) that the city is liable therefor at all, if in fact any damage has accrued to his land, it can only be on the ground that the city became a *trespasser* by doing the work or ordering it to be done. The trespass consists in erecting an embankment across or in front of the plaintiff's lots, which has been paved and curbed as a street usually is, and the damages recoverable for such a trespass must be measured by the injury done to his lots in the condition in which they originally were, by reason of this embankment. But no question involving such damages or the proof of them, is presented by the rulings to which exceptions were taken at the trial. All that the record shows on this subject is that the Court refused to allow the three following questions to be put to the plaintiff's witnesses, &c.

1st. Was or was not the first *grade line* that was established for this street a proper and sufficient *grade line* for which a street would be required?

2nd. What amount of *filling*, if any, is necessary to adapt the plaintiff's lots on either side of this street to the *grade* as *now established*, so that the lots can be utilized for the erection of houses thereon?

3rd. Has or has not the plaintiff's property, in your judgment, been damaged by the grading, paving, and curbing of this street, as *now graded, paved and curbed?*

It is obvious from the tenor of these questions, that the purpose of counsel in asking them was to elicit proof to the effect that the present *grade line* of the street was too high in front of plaintiff's lots, and to make the city responsible for the cost of filling up the lots to that line,

or rather for the difference between the cost of filling to that line and the cost of filling them to the original grade line. In support of the right to claim such difference in cost as part of the damages, it has been argued that there ·was such irregularity in the proceedings under which the *present* grade line was established, as to make it unlawful. But whatever errors we have found in other proceedings relating to this street, we find none in these by which this line was established. The Legislature by the Act of 1874, ch. 218, gave to the city power to provide, by general ordinance, for the establishment of the permanent grade lines of any street or part thereof, now or hereafter to be marked, located or laid out upon the plan of the city, on application of the owner of any property binding thereon, and from time to time for a *change* in any such grade lines which may have been previously so established. In pursuance of this power, provision was made in the general ordinance of 1874, No. 44, by which the City Commissioner was empowered to establish and change grades as authorized by the statute, and he was required, before establishing or changing any such grade, to " give five days' notice in three daily papers of the application made, and that he will appear on the premises on the day to be named in said notice, for the purpose of determining on such application." It is plain, from the terms of the Act of Assembly, as well as from the character of the work itself, that the establishment or change of grade lines is a matter wholly independent of the condemnation or opening of the streets, and may be done at any time before such condemnation, or after it, or before the work of grading and paving is actually completed.

In the present case, it appears from the records in the " *Grade Book*," kept in the office of the City Commissioner, and which he was required to keep, and in which the grades of all the streets are recorded, that the grade line of Caroline street, between Lanvale and Townsend streets,

was established in Aug., 1878, and between Johns and Lanvale streets, in July, 1881. Afterwards, in June, 1882, the grade from Johns street to North avenue was changed, and the record of this change, after stating the application, and that notice thereof had been duly advertised in three daily papers, as required by law, sets forth that "the City Commissioner met the City Surveyor on the premises May 29th, 1882, at 4 o'clock, p. m., and adjourned until June 10th, 1882, at 12 m., at the City Commissioner's office, and further adjourned until June 17th, 1882, upon which day the City Commissioner established the grade as follows," and then the figures and specifications are set out in full. Now the objection is that the *time of day* and *place* of meeting under the last adjournment are not stated, and it is contended that this makes the grade illegal and vitiates the whole proceeding. But in our judgment such a position is wholly untenable. The object of giving the notice, is that all who are interested may meet the Commissioner on the premises and make such objections to the proposed change, or such suggestions as to the grade proper to be adopted as they may choose. This is all that the ordinance seeks to accomplish, in requiring publication of the notice. It does not say, he shall make up his mind and announce his determination then and there; and in fact the figuring and calculations necessary to the actual establishment of a grade line, under which contractors are to make their bids, and by which they are to do their work, could not well be made on the premises. After visiting and examining the locality, it is essential that he should go to his office, where he can consult the grades of other streets to be crossed or connected with the proposed grade, and to which it must be made to conform. No other announcement of his determination is required than the recording of the grade as finally calculated and determined upon, in the record book kept in his office, to which all parties interested can have access. The final

determination rests with the Commissioner alone, but it is not declared when or where he shall make or announce it. The ordinance provides, that, upon a proper application, he may "make such changes in the grades" of any unpaved street, "as he may deem advisable," but, before doing so, he shall give the prescribed notice of the application, and that he will "appear on the premises on the date" named in the notice, "*for the purpose* of determining *on* such application." If then, the application has been made, the notice duly advertised, and he appears on the premises in pursuance of such notice, and within a reasonable time thereafter records in his office his determination and the grade line he has determined upon, both the statute and the ordinance have, in this respect, been gratified. All this appears to have been done in this case, and we are fully satisfied that this grade has been legally changed and legally established as changed.

We have thus considered this point, because it seems to be a new one, and because the appellant's counsel, as we understood him, admitted in argument, that if this change of grade was lawfully made, there could be no recovery on account of any additional costs the plaintiff may be put to in filling up his lots, by reason of this grade being higher than the old one. But we are not to be understood as holding that such costs could be recovered, even if this change was irregularly and illegally made. In fact, the cost of filling up his land to any extent, in order to utilize it for building lots upon this street, as now graded and paved, forms no part of the damages recoverable in this action. The plaintiff cannot charge the city, as a trespasser, with the cost of any work by means of which he can adopt and receive the benefit of the very thing he complains of as a trespass. Finding, therefore, no error in the rulings excepted to, we shall affirm the judgment.