## COOK v. FLAGG.

### (District Court, S. D. New York. September 23, 1915.)

1. TRUSTS 101, 368, 369—CONSTRUCTIVE TRUSTS—ESTABLISHMENT—INJUNCTION AND RECEIVER.

   On motion for an injunction restraining defendant from paying out money, etc., obtained from complainant and others to be used in operating on stock exchanges, *held*, from the affidavits and moving papers, without giving any weight to defendant's conviction of unlawfully using the mails in connection with his scheme, that defendant was guilty of a breach of agreement, it appearing that he did not make investments necessary to carrying out his scheme, and hence a trust arose in favor of complainant, entitling him to an injunction and appointment of a temporary receiver.

2. TRUSTS 366(2)—ENFORCEMENT—PARTIES—MULTIPLICITY OF SUITS.

   A customer of defendant, who had a scheme for operating on stock exchanges, who asserted a constructive trust in his favor on account of defendant's breach of agreement, cannot bring an action for himself and on behalf of those who might come in and join, merely to avoid multiplicity of suits, but there is no objection to the customer's bringing such a representative action because he is a creditor.

3. TRUSTS 305—SUIT FOR ACCOUNTING—PARTIES—REPRESENTATIVE ACTION.

   Where defendant, who obtained money from complainant and other customers for the purpose of operating on stock exchanges deliberately broke his agreement, a trust arose in favor of customers, entitling complainant to sue for an accounting, and he may sue for the benefit of himself and others similarly situated, who might come in and join.

In Equity. Suit by Ellsworth E. Cook against Jared Flagg. On motion for an injunction and the appointment of a temporary receiver. Motion granted.

See, also, 233 Fed. 713.

Motion for an injunction against defendant restraining him from paying out or removing from the jurisdiction of this court any of the money constituting the fund described in the bill of complaint, and also praying for a temporary receiver of said fund. Further relief is also prayed for. The fund referred to is what may remain in the possession or under the control of the defendant of sums of money (said to amount to many hundred thousand dollars) obtained by the defendant from the public upon representations that said sums of money were to be used by him in "operating" on stock exchanges in accordance with a system or theory of purchase and sale set forth by him in circulars and letters sent out for the purpose of procuring customers or depositors. The plaintiff is one of such customers, who at divers times sent to defendant sums aggregating $10,000, upon which he has received from defendant $2,800, alleged to be profits.

The substance of the bill of complaint is that Flagg's representations that he intended, with the money of plaintiff and others, to operate or speculate or invest in stocks and gain profit therefrom by sales and purchases in accordance with his "system," were all false; that he did not follow the system he advertised, and did not in truth make the profits (so called) that he paid over

to plaintiff and others, but that his fraudulent scheme was to get as much money as he could from as many persons as possible, and keep old customers or patrons satisfied by paying to them, under the guise of profits, moneys which really came from new customers or patrons, if he did not pay them back a portion of their own money.

Flagg was indicted in this court for using the mails in carrying on the business said to be described in the bill of complaint herein. He was convicted, and on November 17, 1914, sentenced for the period of 18 months to the penitentiary at Atlanta, Ga. He is, however, still at large on bail pending appeal.

This motion is made on voluminous affidavits, the pleadings herein, and the record of the trial under the indictment above mentioned.

Gilbert E. Roe, of New York City, for complainant.

John M. Coleman and Max Steuer, both of New York City, for defendant.

HOUGH, District Judge (after stating the facts as above). [1] On February 3, 1913, I considered the indictment against Flagg on demurrer. The opinion filed that day shows the view then entertained of what was charged against the defendant. His trial and the record there made have not changed my opinion. Comparing the bill herein with that indictment (which is one of the moving papers), it seems clear that the facts charged in this case are the same as those asserted in the criminal proceedings. It is indeed quite correct to summarize plaintiff's present contention thus: Because Flagg has done the things charged both in bill and indictment, the money he got through such actions is a trust fund, applicable, through the machinery of equity, to reimburse those whom he defrauded; and preliminary relief may be granted by injunction and receiver, because by his conviction Flagg is presumptively, if not conclusively, held to have done the very things thus doubly charged.

Before considering the technical right of plaintiff to bring a suit, and especially to bring it in the way he has done, some inquiry may be made as to whether the papers submitted on this motion throw any light on what Flagg did, as distinct from what he professed to do.

Defendant has submitted a lengthy affidavit, and also his account or record of proceedings with Cook, the plaintiff herein. In the affidavit he says:

"Each customer had in my office the same kind of an account, and was treated in exactly the same way as it (the account?) is treated in a reputable brokerage house."

Specifically of Cook he said:

"During the whole of the term of the contract I sent to Mr. Cook the profits that were made, and I continued upon commitments upon which there had been sustained losses, intending to carry them as long as his margin would last, and possibly longer, and waiting until the market turned, and until there was a clear profit of at least one point in the transaction."

No time need be spent in describing the transactions of a reputable brokerage house with a margin customer, beyond noting the fact that it is an essential of "reputability" that the broker must at all times have in his possession or under his control the stocks being carried,

and stand ready to deliver the same to his customer whenever the latter makes demand and discharges his own debt to the broker.

Flagg took from every customer (including, of course, Cook) an order contract (Exhibit C), and it may be admitted (for purposes of argument) that this paper does disclose a sort of agreement uncommon, but not at all impossible, between broker and customer, except that Cook by operating in fractional shares bound himself to be treated only as a fraction of a "unit," which word signified in Flagg's business a collection of customers whose deposits with Flagg aggregated $10,000. But, regarding a "unit" as the money of one man (which perhaps was the case in some instances), this order contract means that Flagg agreed to go long of some and short of other enumerated stocks, and take a profit of one point or better, if the market was favorable, and then repeat.

As to what would happen if the market was wholly unfavorable, the contract is silent so far as plain language is concerned; but it is inferable that it was contemplated that a customer's, or even a "unit's," margin might become exhausted. Construed by their own language only, Flagg's order contracts evidence a highly speculative margin account, which Flagg might place with any broker unless he chose to employ a floor broker only and actually carry the stocks himself; i. e., have them in his own possession or under his own control.

In my judgment the evidence furnished by Flagg himself shows that he is not now carrying and has not carried for several years any stocks either for short or long account for Cook, and there is every probability that what he has done with, to, or for Cook he has done in respect of all his other so-called customers. The convincing evidence on this point is (I think) found in the utter refusal of a man in Flagg's position to state what he has, or what he has had, or what he has done with that which he received. The inference is irresistible that he does not tell that which he must know, because, if he told, the telling would do him no good.

The next very persuasive item of evidence is Flagg's colloquy upon his trial with one of the jurors. The defendant there substantially asserted that he carried no accounts in brokers' offices, but employed only a floor broker. He said, "My customers were dealing with me as a broker;" and he agreed to the juror's suggestion that the accounts were in his books. It follows that if Flagg did not carry his customers' accounts with any broker, but carried them himself as a broker, he ought to be able to produce the stocks or show exactly how and why he lost them. But in order to escape being convicted at least of civil fraud, he must show that he lost them while pursuing the agreed scheme of operations set forth in the so-called order contract.

An analysis of the Cook account, furnished by Flagg and purporting to show the present condition of Cook's transactions, is to me conclusive proof that Flagg did not carry out the scheme originally proposed. He still has, according to this account, what he calls "open commitments" on behalf of Cook in the stock of the Reading Railroad, and he has had some of them since June, 1910, and the operation was on its face a long one. Yet he has never sold, while it is easily ascer-

tained that opportunities to sell at a profit existed for a very long time, and the amount of such profit was far more than one point.

Mutatis mutandis, the same thing is shown by examining the short account in the common stock of the Steel Corporation. In truth, Flagg's account with Cook submitted on this motion is of itself proof positive·of most flagrant disregard of the contract upon which Flagg relies as between himself and Cook.

The next natural inquiry is why Flagg did not close out these short and long operations when he could have done so at a profit, if his account is truthful. The only explanation of this is found in the affidavits of the so-called liquidating committee of men who believed in Flagg, and tried to assist him when he got into trouble with the federal government in closing out his enterprises. The inference I draw from these affidavits is that, since they could not find, nor get any information concerning, the major portion of the stocks and bonds necessary to make good Flagg's engagements, there never were such stocks and bonds, at least in any quantities at all responding to the magnitude of Flagg's operations with the public.

Comment seems unnecessary upon the major portion of this defendant's affidavit. I have chosen from it certain definite statements, and measured them by a document which is assumed to be a contemporary record of what Flagg did. It is impossible to fit this record with Flagg's publications. Thus he talks about "commitments," and "open commitments," but he nowhere explains what is meant by such a loose phrase. This one failure of explanation renders most of his affidavit a mere mass of words, signifying nothing.

When one considers the affidavit in conjunction with circular letters sent out by or under the direction of Flagg, I am wholly at a loss to reconcile the plan of business or speculation described in the circulars with either Flagg's affidavit, the Cook account, or the remarks of Flagg upon his trial before Judge Rudkin.

The whole theory of speculation is this: Whether you buy for long account or sell for short, always hold on until the transaction shows· a profit of at least one point. It will always do this in time; it may take years, but experience shows that every stock "reacts," if you only give it time enough.

The reason why Flagg wanted so much money was to get the funds to hang on with; this idea is set forth again and again. This is simple enough, and could have been expressed in much fewer words than Flagg has devoted to it.

But, if a speculator is going to "hang on," he must have something to hang on to; there must somewhere be actual stocks, and this is what I think these papers show do not exist, and never did exist, in any quantity that at all responded even to the $200,000 mentioned in one of Flagg's earlier circulars as the then amount of the working capital of his "units."

I am thus satisfied that, without giving any weight to Flagg's conviction, it is affirmatively shown that he is presumptively guilty of a breach of his agreement with Cook and many others, and, further, that such breach was a calculated one, intended from the beginning.

[2, 3] This action is brought by Cook on his own behalf, and on behalf of those who may come in and join; i. e., other customers of Flagg's. He obviously cannot bring this action merely to avoid multiplicity of suits. Watson v. Huntington, 215 Fed. 472, 131 C. C. A. 520. But there is no objection to his bringing such a representative action merely because he is a creditor. Perhaps the most convenient way to test his right is to consider whether he could bring the action for himself alone.

I think he could have done so, because he has a right to an accounting—an accounting from one who became Cook's trustee, a trust arising from the calculated and deliberate breach of agreement made with Cook coupled with a possible partial performance. This suit is very like Gaffanti v. National Surety Co., 196 N. Y. 452, 90 N. E. 174, 134 Am. St. Rep. 848. To be sure, the claims of all Flagg's creditors do not grow out of the same contract; they grow out of absolutely similar contracts, and it is my opinion that Flagg's treatment of all the contracts was exactly alike. In its essential features, Alsop v. Conway, 188 Fed. 568, 110 C. C. A. 366, is not unlike this litigation.

An injunction and receiver may issue as prayed for. Settle order on notice.