## DOTY et al. v. MASON.

(District Court, S. D. Florida. August 27, 1917.)

No. 1629.

1. BANKRUPTCY ⊂⊃76(1)—CLAIMS—LIABILITY AS INDORSER.

Presentment for payment, dishonor, and notice fix the liability of the indorser of a note, and the payee may then proceed at his option against that of the maker or indorser; hence the payee may, in such case, file an involuntary petition in bankruptcy against the indorser based upon his claim arising on the note.

2. BANKRUPTCY ⊂⊃92—PETITION—CLAIMS.

The claim of a petitioner in bankruptcy against the alleged bankrupt, based on the bankrupt's indorsement of a note, will not be stricken from the petition, because of the pendency in the state court of a suit between the petitioner and indorsers in relation to the note.

3. BANKRUPTCY ⊂⊃76(3)—GENERAL ASSIGNMENT—CONSENT.

A creditor who assents to the debtor's general assignment for the benefit of creditors cannot thereafter urge such assignment as an act of bankruptcy, but a creditor's knowledge and assent to the execution of an assignment does not, where a subsequent assignment was necessary to give it effect as a general assignment, prevent the creditor from urging that the last assignment was an act of bankruptcy.

4. BANKRUPTCY ⊂⊃81(3)—PETITION—SUFFICIENCY.

The sufficiency of a petition in involuntary bankruptcy, in respect to the description of the petitioner's claim, must be tested by the rules which would govern a declaration or a bill in equity, in an action or suit to enforce such claims.

5. BANKRUPTCY ⊂⊃77—JURISDICTION—PROVABLE CLAIMS.

The existence of provable claims to the requisite amount is essential to the bankruptcy court's jurisdiction.

6. BANKRUPTCY ⊂⊃81(3)—PETITION—CLAIMS.

The existence of debts or claims to the requisite amount being jurisdictional, the existence of such debts or claims should be alleged with sufficient definiteness for the court to find from the petition in bankruptcy the jurisdictional fact.

7. BANKRUPTCY ⊂⊃81(3)—PETITION—SUFFICIENCY.

In view of the Florida decisions that bills of particulars, attached to pleadings and not made a part of such pleadings by apt words, cannot be reached by demurrer, notes and accounts attached to a petition in bankruptcy, filed in the District Court for Florida, do not become a part thereof, so that upon attack of the petition by motion to dismiss, they cannot be considered.

8. BANKRUPTCY ⊂⊃92—PETITION—DISMISSAL.

A petition in bankruptcy, to which were attached exhibits which might readily have been made a part of the petition, defective because of such failure, will not be dismissed without opportunity to amend.

⊂⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

9. **BANKRUPTCY** ⊚⇒92—PETITION—EXHIBITS.

Accounts attached to a petition in bankruptcy cannot be reached by a motion to dismiss in the nature of a demurrer, unless they were made part of the petition by proper reference.

10. **BANKRUPTCY** ⊚⇒92—CLAIMS—DISMISSAL.

Where petition in bankruptcy alleged that petitioners rendered services to bankrupt, the fact that accounts attached to the petition as exhibits showed that the services were rendered to the bankrupt and others furnishes no ground for motion to strike such claims.

11. **PERPETUITIES** ⊚⇒6(11)—RULE AGAINST—CONVEYANCE IN TRUST.

An agreement or declaration of trust, whereby trustees acknowledged that they held the property for the benefit of the grantor's mortgage creditors, his individual creditors, and for the holders of certificates of shares in an unincorporated association, provided for issuance of certificates to the grantor and others, and for the declaration of dividends, etc., and authorized the trustees to borrow money and dispose of any or all of the trust property. The agreement provided that the trust should continue for 27 years. *Held*, that conveyances and assignments made to give effect to the trust did not violate the rule against perpetuities forbidding property to be withdrawn from sale for a period longer than a life or lives in being, and 21 years thereafter; the rule being directed against the withdrawal of land from sale, and the trust agreement not withdrawing such property from sale.

12. **BANKRUPTCY** ⊚⇒76(3)—ASSIGNMENTS—AMENDMENTS OF ASSIGNMENTS.

Where creditors failed to attack, as a general assignment, the original conveyance and assignment within four months thereafter, the fact that the grantor subsequently executed a second instrument, which shortened the period of the trust, and in some respects enlarged the trustees' powers, will not warrant the creditor in urging that the second instrument constituted an act of bankruptcy; it being a mere amendment of the first.

In Bankruptcy. Involuntary petition by Clarence T. Doty and others against Henry Mason, otherwise known as Harry Mason. On motion to dismiss the petition. Dismissed.

George M. Powell and Charles E. Pelot, both of Jacksonville, Fla. (F. L. Dancy, of Jacksonville, Fla., on the brief), for petitioners.

Kay, Adams & Ragland, of Jacksonville, Fla., for defendant.

CALL, District Judge. On October 6, 1916, an involuntary petition in bankruptcy was filed by Doty and others against Harry (Henry) Mason, in which, after alleging the jurisdictional facts, the claims of petitioners were stated as follows:

(a) Doty's claim, based on a "promissory note, a true copy of which is hereto attached as Exhibit A."

(b) Collins' claim is for balance due for work and services rendered to Mason, "as per statement hereto attached as Exhibit B."

(c) Powell & Pelot's claim is due for services performed for Mason and disbursements, "in accordance with the attached statement of account, Exhibit C."

The act of bankruptcy is alleged as the making of a general assignment for the benefit of creditors by Mason on August 1, 1916. Copies of the instruments relied on as constituting the assignment for the benefit of creditors are attached to and by apt words made a part of the petition.

---

⊚⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The bankrupt to this petition files four motions to dismiss, three of said motions being directed to the claims of petitioners as set out in clauses "a," "b," and "c" of the petition.

[1] The first ground of the motion to strike Doty's claim is that it appears from the petition and exhibit that the bankrupt's liability is that of indorser, and no showing that the petitioner has pursued his remedy against the maker or other indorser, or that either or both are insolvent.

The case of In re Bowers (D. C.) 215 Fed. 617, decided by Judge Newman, does not, in my opinion, sustain the contention of counsel that the payee of a note cannot petition an indorser in bankruptcy without first showing either that the other indorser and maker, one or both, are insolvent, or that he has exhausted his remedies against them. The petition alleges presentment for payment, dishonor, and notice. This is sufficient to fix the liability of the indorser, and the payee may then proceed at his option against either the maker or any one of the indorsers he may elect. The Bowers Case held that liabilities as indorser would not be taken into consideration in arriving at solvency vel non in a case where the makers were shown to be solvent and able to pay the obligation. And this, I think, was correct.

The above disposes of the second ground of the motion.

[2, 3] The third ground is based upon a suit claimed to be pending in the state court between Doty and the indorsers in relation to this note. This is not a reason, in my judgment, to strike the claim of Doty from the petition. The two motions to strike claims "b" and "c" of the petition rest virtually on the same grounds, i. e., knowledge of and assent to the instruments relied upon to constitute the general assignment.

It is too well settled to admit of controversy that a creditor who assents to a general assignment for the benefit of creditors cannot thereafter urge such general assignment as an act of bankruptcy. In the instant case, however, the petitioners do not rely upon the deed and declaration of trust of November 10, 1915, but do rely upon the instruments executed August 1, 1916. In other words, that these last-mentioned instruments made effective the intention of the bankrupt to make a general assignment, and until their execution there had been no general assignment. If this view is correct, then any knowledge of or assent to the instruments executed in November could have no deterrent effect upon the petitioners to proceed against the August instruments.

[4, 5] The fourth motion is to dismiss the petition, the first ground of which is general. The second and fourth grounds are that it does not appear by the petition that either of the petitioners have provable claims against the bankrupt. The fact that note and accounts attached to the petition were not made parts of it was stressed in argument by counsel for the bankrupt, and that without such note and accounts, the allegation was too general to require the bankrupt to answer, and therefore the petition would have been amenable to a demurrer, before the adoption of the new equity rules, and is now vulnerable to attack by motion to dismiss.

[6] The sufficiency of a petition in involuntary bankruptcy in respect to the description of the claim of the petitioners is to be tested by the rules of pleading which would govern a declaration or a bill in equity in an action or suit brought to enforce such claims. The existence of provable claims to the requisite amount is jurisdictional. As said by Judge Connor, in Re Farthing (D. C.) 202 Fed. 562:

"The existence of provable debts against the respondent, due to each of the petitioning creditors * * * is jurisdictional. It follows, therefore, that the existence of such debts or claims and their nature should be alleged with such particularity and definiteness as will enable the court to find from the petition the essential jurisdictional fact. In a creditor's bill, to which a petition in involuntary bankruptcy may be assimilated, the indebtedness by the defendant to the plaintiff should be set forth with that degree of particularity of description which would entitle the plaintiff to judgment upon it in an action at law."

[7] In the petition (a), Doty's claim is described as "a liability of Mason, based on a promissory note; the amount thereof is $5,000, and at the time of filing the petition is still due and unpaid, with interest from a certain date," etc.

Collins' claim (b), balance for work and services rendered to Mason; that there is due thereon $5,000, with interest from a certain date.

Powell & Pelot's claim (c), balance due for services performed for Mason, and for disbursements, and the amount due thereon is $15,246.90, with interest from a certain date.

[8] It is extremely doubtful if such statements standing alone would be sufficient. "B" and "c" might be, under the forms for common counts, for work and labor done. "A" would clearly not be sufficient. There is nothing in the statement to show by whom the note was made, to whom payable, etc. But each of these clauses refer to the note and accounts as Exhibits A, B, and C, respectively. And it is contended they become thereby a part of said petition. I am referred to two cases by petitioners to support this theory: State v. S. A. L., 56 Fla. 670, 47 South. 986, and Seebass v. Mutual Reserve Fund Life Association (C. C.) 82 Fed. 792. In the first of these cases the exhibit by apt words was made a part of the pleading, and in the second the decision was based upon the statute of New Jersey, which specifically made exhibits attached and referred to a part of the pleadings. Under the uniform decisions of the Supreme Court of Florida, that bills of particulars attached to pleadings and not made a part of such pleadings by apt words cannot be reached by demurrer, I am of opinion that said note and accounts, by being attached to said petition as Exhibits A, B, and C, do not become a part thereof, so that upon attack by motion they can be referred to in order to rescue the petition from attack. Cheney v. Trammell, 65 Fla. 459, 62 South. 916, and cases cited. This defect is, however, easily amendable, and the petition would not be dismissed without opportunity afforded the petitioners to make such amendment, and I proceed to the consideration of the other grounds.

[9, 10] The third, fourteenth, and fifteenth grounds of the motion treat the accounts Exhibits B and C as parts of the petition, and at-

tack it third because the accounts show that the services were performed to Mason and others jointly, and fourteenth and fifteenth because the accounts show that those two petitioners knew of and consented to the instruments now attacked as a general assignment for the benefit of creditors. While I do not think the accounts have been, by proper reference, made a part of the petition so that they can be reached by the motion treating it as performing the office of a demurrer, even if such accounts be considered parts of the petition, I do not think either is well taken. As to the third ground, while the account may show services rendered to other parties, the petition alleges such services were rendered for Mason; and as to the fourteenth and fifteenth grounds the reply is the same as made above to the motion to strike clauses "b" and "c."

[11, 12] The other grounds of the motion attack the petition because it is contended that the conveyances attached to and made a part do not constitute a general assignment within four months before the filing of the petition.

In November, 1915, the bankrupt, joined by his wife conveyed to five persons as trustees, and their successors and assignees in fee simple, 2½ lots in the city of Jacksonville, to have and to hold unto the said trustees, their successors, heirs and assigns forever in trust for the uses, purposes, and conditions set forth in an agreement and declaration of trust of the same date. This conveyance had warrant of title, etc., except as to certain mortgages specified. On the same day the trustees and grantors in the aforesaid conveyance entered into an agreement and declaration of trust, whereby the trustees acknowledged they held the property for the benefit of: (A) The mortgage creditors; (B) The individual creditors of Mason; and (C) the holders of certificates of shares in the Mason Hotel Company, an unincorporated body provided for in the agreement (consisting of the trustees.) The trustees were authorized to do business of various kinds for the purpose of refunding the obligations under class A, and to that end to make a deed of trust and issue bonds thereunder to the amount of $650,000. This agreement further provided that the trustees should hold the legal title to all property; that they should have authority to adopt and use a common seal, make contracts in the conduct of the trust, release, sell, exchange or otherwise dispose of at public or private sale any or all of the trust property, real and personal, either in cash or for credit, as they deemed expedient, and various other powers therein named. Finally, and in addition, they were vested with such powers as are usually possessed by directors of corporations engaged in similar businesses under the laws of Florida. It provided for stated meetings of the trustees, and that a majority should control; that they should elect one of their number chairman, also a secretary and treasurer, and appoint such agents and attorneys as they deemed necessary, etc., and fix their compensation. It then provided that the trustees should issue to Mason 1,000 shares or certificates, and to his wife 500 shares or certificates in the Mason Hotel Company, as the consideration of the conveyance of the property described in the conveyance first above mentioned, and that the holders of such certifi-

cates should be the beneficial owners of such properties, profits, etc. It further provided that the trustees from time to time at their discretion could declare dividends out of the net earnings. It then provides that the shares should be personal property, and the executors and administrators would succeed to the rights of a deceased shareholder; that ownership of shares should not entitle the holder to any title in or to the trust property, or right to call for a partition or division of the same or for an accounting; that no debts contracted by the trustees shall be binding personally upon the shareholders; that the trustees shall be held blameless and indemnified out of the trust estate for any personal liability incurred by him, except such as may result from the acts done in bad faith. It then provides that the trust shall continue for 27 years, after which period it shall be liquidated and the proceeds distributed among the shareholders, except that the shareholders may, under certain contingencies, authorize the continuance of the trust for a longer period. It then provides the method by which the agreement and declaration may be amended. It also provides for the distribution of the proceeds in the event of the sale by the trustees of any or all of the trust estate, and defines the term "net profits."

On November 15, 1915, the trustees executed a mortgage to a trustee of the trust property to secure an issue of $650,000 known as the Mason Hotel Company, 6 per cent. refunding bonds for the purpose of refunding class A and class B as specified in the conveyance first mentioned. These instruments were all duly filed and recorded at or about the time of their execution. On August 1, 1916, pursuant to authority contained in the agreement of November 10, 1915, the powers of the trustees were enlarged, and they were authorized to issue $150,000 income bonds, to be a junior lien to the $650,000 refunding bonds, on the trust property. They were also empowered to use so much of the proceeds of the last issue as they deemed expedient in the operation of the properties or adjusting any claim pertaining to said properties, whether the obligations were those of Mason or the Mason Hotel & Investment Company, a corporation.

The trustees were also empowered to issue short-term notes for the purpose of borrowing money to be used in the administration of the trust and pledge the income and rents for the payment of same. A limit upon the indebtedness of the trustees is placed at $800,000. The trustees are given the right to make settlement of all outstanding bonds of the Mason Hotel & Investment Company, and any claims against said company pertaining to said trust property.

This agreement of August 1, 1916, then amends former agreement by providing that the trust shall determine 21 years after the death of the last surviving trustee named in the agreement of 1915. This instrument was recorded August 25, 1916. On August 1st the trustees, pursuant to the amended agreement of August 1st, executed a mortgage upon the trust property to the Guaranty Trust & Savings Bank to secure $75,000 of income or second mortgage bonds. The position of the petitioners, as I understand it, is that this amended agreement and the mortgage thereunder in connection with the prior

conveyances and agreement constitute a general assignment for the benefit of creditors. I do not understand that the petitioners claim that the amendment to the agreement and the mortgage thereunder of themselves standing alone would be an act of bankruptcy, but that the original agreement and declaration of trust is void because it violates the rule against perpetuities, and only became effective on August 1, 1916, by the change then made in the term the trust should continue.

It is therefore this question that should be first decided. The rule against perpetuities forbids that property shall be withdrawn from sale for a period longer than life or lives in being, and 21 years thereafter. The original agreement or declaration of trust provided that it continue for 27 years, the amendment that it should continue for 21 years, after the death of the survivor of five trustees first appointed. The Supreme Court of Florida, in Cawthon v. Stearns Lumber Co., 60 Fla. 315, 53 South. 739, say:

"The interest of the grantee having vested upon the execution and delivery of the deed of conveyance, the continuance of the vested interest does not offend the rule against perpetuities."

In the instant case the estate, trust or otherwise, of the five parties vested under the conveyance of November 10, 1915, and under that instrument and the agreement and declaration of trust, was to continue for 27 years, and such additional time as was necessary to wind up the trust officers only.

The rule against perpetuities is directed against the withdrawal of real property from sale. In the original agreement and declaration of trust the land deeded is not withdrawn from sale. The power to dispose of any and all of the trust property is vested in the trustees absolutely. The time of sale, the terms, whether for cash or on credit, is left to their discretion. The certificates or shares held by the cestui que trust are negotiable, and provision is made for their sale, involution by law, and transfer by the trustee. For each of these reasons it seems clear to me that the first agreement and declaration of trust does not offend against the rule. If it does not, then the interest of the bankrupt vested in the trustees on November 10, 1915, and any attack made at this time of filing the petition comes more than four months after the instruments were recorded.

With the interest of the bankrupt vested, the changes made by the amended agreement would be changes in the powers of the trustees, and in my judgment would not constitute an act of bankruptcy.

There are other objections urged against the petition by the bankrupt; but, in the view I take of the case, it is not necessary to discuss them.

The motion to dismiss the petition will therefore be granted.