### BRYAN v. WELCH et al.
#### No. 1136.

Circuit Court of Appeals, Tenth Circuit.
Jan. 7, 1935.

G. C. Spillers, of Tulsa, Okl., and W. E. Utterback, of Durant, Okl. (Wm. B. Blair, C. R. Nixon, and L. J. Bicking, all of Tulsa, Okl., on the brief), for appellants.

Tom D. McKeown, of Washington, D. C., Wm. P. Thompson, of Oklahoma City, Okl., and Francis Stewart, of Muskogee, Okl. (C. E. Hall, of Oklahoma City, Okl., and D. H. Linebaugh, of Muskogee, Okl., on the brief), for appellees Welch and others.

Leslie H. Norris, of Oklahoma City, Okl., for appellees Horn and others.

Before LEWIS and PHILLIPS, Circuit Judges.

PHILLIPS, Circuit Judge.

This matter was before this court on an appeal from five orders made in a proceeding in bankruptcy. One of these orders overruled a motion to dismiss a petition in bankruptcy filed under section 77 B of the Bankruptcy Act (11 USCA § 207) by Vesta Welch and five other holders of certificates for class A preferred beneficial interests or shares in the Imperial Royalties Company, a common law trust, and one appointed a temporary trustee.

In our opinion filed September 8, 1934, 72 F.(2d) 618, 620, we held that the petition was jurisdictionally defective in that it failed to allege facts showing the petitioners were creditors of the Royalties Company, and failed to allege the insolvency of the Royalties Company, and said:

"After the District Judge made the orders of which complaint is made by appellants, he continued the whole controversy for final hearing and disposition to September 18th. We must assume that the proceeding will be dismissed at that time unless by the intervention of creditors and appropriate allegations by them the two vital defects will be cured. On failure therein application may be made for our mandate."

On September 10, 1934, Agee and other holders of certificates for class A preferred shares in the Royalties Company filed an amended petition of intervention. They allege that under their certificates and the declaration of trust they are entitled to annual dividends out of the receipts of the Royalties Company, that due to the failure of the Royalties Company to declare and pay such dividends it is indebted to them in amounts exceeding in the aggregate $24,-642.82, and that they hold no securities therefor.

They further set out a brief description of the assets, liabilities, capital stock, and financial condition of the Royalties Company, and allege that it is either insolvent or unable to meet its debts as they mature.

They further allege the pendency of a prior equity receivership in the district court of Tulsa county, Oklahoma.

On September 18, 1934, they filed an amendment to their petition to which they attached a copy of the amended declaration of trust of the Royalties Company executed December 1, 1930,[1] and in which they allege that their certificates are substantially in the form of the certificates set forth in such amended declaration of trust.

---

[1] The amended declaration of trust in part reads as follows:

"3. The Trustees shall have the power and discretion, as if absolute owners, to use and invest the Trust fund, *(including any or all receipts from any source) for the operation of the business of owning, buying, selling, and otherwise acquiring or disposing of oil and gas royalties, and of oil and gas royalty acreage, developed and undeveloped, and including casinghead gas and gasoline rights and royalties,* (all of which are herein referred to as oil and gas royalties) in the United States of America, and in the Republic of Mexico, *or in paying dividends or distributions or other payments upon shares and/or for the expenses of the Trust, properly to be paid therefrom, and for creating proper reserves,* and to do and perform all acts concerning or in connection with said Trust, or the property belonging thereto, *as in their judgment are wise, necessary and calculated to advance the interests of said Trust.* * * *

"8. The certificates representing the Preferred shares (or beneficial interests) which are to be executed by the Trustees shall be in substantially the following form, to-wit:

"This is to certify that ———— is the owner of ———— preferred shares of Imperial Royalties Company under and subject to the provisions of the Amended Declaration of Trust of said Imperial Royalties Company dated May 27, 1927, and recorded in the office of the Clerk of Tulsa County, Oklahoma, at Tulsa, Oklahoma, which provisions, by acceptance of this certificate, the holder hereof accepts and agrees to be bound by. * * *

"The Preferred shares represented by certificates outstanding shall be entitled to dividends or distributions at the rate of twelve per cent. (12%) per annum out of the receipts of the Trust *before any dividends may be paid on the Common shares;* and the Trustees may, in their discretion and within the limitations of the Amended Declaration of Trust, pay such additional, or special and extra, dividends or distributions upon Preferred shares from time to time as they think advisable. Preferred shares will share or prorate dividends with Class A Preferred shares as provided in the Amended Declaration of

Trust. Except only as to the current dividends and distributions at annual rates, *declared or ordered* upon the Preferred shares and Class A Preferred shares from time to time during the continuance and operation of the Trust in excess of the dividends and distributions declared or ordered upon the Common shares and Class A Common shares, all shares of every class shall participate in all distribution or payments thereon or thereto or on account thereof proportionately as provided in the Amended Declaration of Trust. * * *

"9. The certificate representing the Class A Preferred shares (or beneficial interests) which are to be executed by the Trustees shall be in substantially the following form, to-wit:

"This is to certify that ———— is the owner of ———— Class A Preferred shares of Imperial Royalties Company under and subject to the provisions of the Amended Declaration of Trust of said Imperial Royalties Company, dated May 27, 1927, and recorded in the office of the Clerk of Tulsa County, Oklahoma, at Tulsa, Oklahoma, which provisions by acceptance of this certificate, the holder hereof accepts and agrees to be bound by. * * *

"The Class A Preferred shares represented by certificates outstanding shall be entitled to dividends or distributions at the rate of One Dollar and Eighty Cents ($1.80) per share per annum out of the receipts of the trust *before any dividends may be paid on the Common shares;* and the Trustees may, in their discretion and within the limitations of the Amended Declaration of Trust, pay such additional, or special and extra, dividends or distributions upon Class A Preferred shares from time to time as they think advisable. Class A Preferred shares will share or prorate dividends with Preferred shares as provided in the Amended Declaration of Trust. Except only as to the current dividends and distributions at annual rates, *declared or ordered* upon the Class A Preferred shares and Preferred shares from time to time during the continuance and operation of the Trust in excess of the dividends and distributions declared or ordered upon the Common shares and Class A Common shares, all shares of every class shall participate in all distributions or payments thereon or thereto or on ac-

On September 17, 1934, Brinstad and others filed an amended petition of intervention in which they allege they are the owners of certificates for class A preferred shares of the Royalties Company; "that before and at the time of the purchase of said shares * * * the trustees of said trust, * * * issued certain other documents and papers explaining and interpreting said amended declaration of trust. * * * That in said papers and declarations said debtor, through its authorized trustees, promised and agreed that the dividends and distributions on said class A preferred beneficial interests aforesaid to 'the extent of twelve per cent (12%) were guaranteed, and that same would be paid monthly; * * * that * * * the amended declaration of trust made May 27, 1927," provides "that the class A preferred shares should be entitled to dividends out of the receipts of the trust, at the rate of $1.80 per share per annum." And under it "each owner of class A preferred shares became entitled to the sum of $1.80 per share per year, out of the receipts of said trust. * * * That said distributions due and payable to these creditors for the months of January, February, March, April, May, June, July, August, September, October, November, and December, 1932, at the rate of $1.80 per share are past due and unpaid, although the receipts of said debtor prior to said period of time were more than sufficient, over current expenses, to pay the amounts due these petitioners upon their said shares. * * * That in addition thereto, there have accrued to these creditors other dividends declared by the trustees of said trust, and due them under their certificates of trust and the declaration and amended declaration of trust hereinabove referred to, for the years 1929, 1930, and 1931, in amounts exceeding $1.80 per share per annum, which amounts likewise remain unpaid, and for which said creditors have a just and proper claim, both at law and in equity, against said debtor."

They further allege that the Royalties Company is either insolvent or unable to meet its debts as they mature, and the pend-

count thereof proportionately as provided in the Amended Declaration of Trust. * * *

"14. Preferred shares represented by certificates outstanding shall be entitled to dividends or distributions at the rate of twelve per cent. (12%) per annum out of the receipts of the Trust *before dividends may be paid on the Common shares* of either class; and the Trustees may, in their discretion and within the limitation of this Amended Declaration of Trust, pay such additional, or special and extra, dividends and distributions upon Preferred shares from time to time as they think advisable.

"15. Class A Preferred shares represented by certificates outstanding, shall be entitled to dividends or distributions at One Dollar and Eighty Cents ($1.80) per share per annum out of the receipts of the Trust *before any dividends may be paid on the Common shares* of either class; and the Trustees may, in their discretion and within the limitations of this Amended Declaration of Trust, pay such additional, or special and extra, dividends or distributions upon Class A Preferred shares from time to time as they think advisable. * * *

"19. Any receipts available for current annual dividends, which shall remain from time to time after payment of the preferential dividends or distributions upon Preferred shares of either class up to the rates provided for, to-wit, at the rate of twelve per cent. (12%) per annum upon the Preferred shares and at the rate of One Dollar and Eighty Cents ($1.80) per share per annum upon the Class A Preferred shares, shall, in the discretion of the Trustees, and when and as they shall order, be utilized, subject to the provisions of this Amended Declaration of Trust, as follows, to-wit:

"(a) * * * Payment of *additional* dividends or distributions to or upon the Preferred shares. * * *

"(b) * * * Payment of *additional* dividends or distributions to or upon the Class A Preferred shares. * * *

"(c) * * * Payment of dividends or distributions to or upon the Common shares or Class A Common shares. * * *

"(d) * * * In acquiring additional royalties for the benefit of the trust or for meeting other charges, expenses, outlays or investments of or for the trust. * * *

"34. *The determination of the Trustees as to the amount or propriety of dividends or distributions, whether regular, additional or special and extra*, as well as their determination as to the amount and propriety of all other payments made on account of any shares of any class, whether such dividends, distributions or payments be made during the continuance of Trust or at the winding up thereof at the termination of the Trust period or theretofore, shall be final and conclusive, provided they shall not thereby violate **any** of the applicable provisions relative to dividends, distributions or payments to be made upon the shares of various classes." (Italics ours.)

ency of a prior equity receivership in the district court of Tulsa county, Oklahoma. They attach as exhibits to their petition a copy of the amended petition in the state court and the order appointing the receiver. The petition in the state court alleged as grounds for the removal of the trustees and the appointment of a receiver, fraud, gross mismanagement, and waste and dissipation of the trust estate by the trustees, and that the Royalties Company was either insolvent or in imminent danger of becoming insolvent.

The order adjudged and decreed that Bryan be appointed receiver of the Royalties Company and of all its property, real, personal, and mixed of every kind whatsoever, with full power to demand, sue for, collect, receive and take into his possession and preserve its goods, property, assets and choses in action, to take possession of its books and records, and to prosecute and defend all claims for or against it.

On September 18, 1934, Welch and the other original petitioners filed an amended petition in which they allege that they are the holders of certificates of class A preferred beneficial interests or shares in the Royalties Company; that under the certificates and the amended declaration of trust they are entitled to receive annually out of the receipts of the trust $1.80 upon all class A preferred shares held by them.

That the income of the Royalties Company for 1932, after deducting administrative and operating costs, was $453,462.20, and that such amount "was available for dividends. * * * That the owners of class A beneficial interests thereupon became entitled to receive, absolutely, their pro rata part of these receipts, with interest at the legal rate upon said amounts from said date. That each of said amounts is past due since said date, wholly unpaid, and was unpaid at the date of the filing of the petition in bankruptcy herein, and each of the petitioners herein named became a creditor of said Trust to the extent of said amounts herein last above referred to; that the aggregate of said debts is more than $1,000.00.

"That in addition thereto, there have accrued to these creditors other dividends declared by the trustees of said trust, and due them under their certificates of trust and the Declaration and Amended Declaration of Trust hereinabove referred to, for the years 1930, 1931, and 1933, in amounts exceeding $1.80 per share per annum, which amounts likewise remain unpaid, and for which said creditors have a just and proper claim, both at law and in equity against said debtor. * * *

"That said debtor corporation is either insolvent or unable to meet its debts as they mature."

They further allege substantially the same facts with respect to the state court receivership as are alleged in the amended petition of intervention of Agee and others.

On September 18, 1934, Manley and others filed an amended petition in intervention in which they allege "that the intervenors herein are creditors of the debtor * * * and have provable claims against said debtor * * * which amount in the aggregate in excess of the value of securities * * * held by them, * * * to over one thousand dollars. The nature of the claims which each of your petitioners have against the debtor * * * arises out of the fact that each of your intervenors have advanced divers and various sums to the said debtor * * * in consideration of certain guaranties and agreements whereby your said petitioners were delivered certain evidence of beneficial ownership in the assets of the said corporation in the form of certificates of preferred shares in the form of the blank heretofore attached to the original and amended petitions in this case which guaranteed to your petitioners one dollar and eighty cents ($1.80) per share per annum out of the assets of said trust properties which has never been paid, and there is now due them and unpaid over one thousand dollars upon said written guarantee. * * *"

They also adopt the allegations of the amended petition of the original petitioners.

The Royalties Company, Hamerick and other owners of more than 25% of the outstanding stock of the Royalties Company by motions challenged the sufficiency of such amended petition and petitions in intervention on the ground among others that they affirmatively show that the original petitioners and interveners are not creditors of the Royalties Company, and fail to allege either the pendency of a prior equity receivership or bankruptcy proceedings, or an act of bankruptcy within four months.

On September 18, 1934, E. S. and John E. Horn, Minteer, and Campbell filed a petition in intervention herein in which they allege that they are the creditors of the Royalties Company; "that the nature of the claims which each of these intervening pe-

titioners have against said **debtor** trust arises out of the fact that each of these intervening petitioners have heretofore and prior to the appointment of equity receiver \* \* \* advanced and paid out for the benefit of said debtor trust, various and sundry sums of money in payment and extinguishment of certain debts, accounts, expenses and other obligations of said debtor trust, which were the direct obligations of said debtor trust and for the payment of which it was legally liable; that these intervening petitioners so advanced and paid said debts for the benefit of said debtor trust to protect and preserve the assets and business thereof, upon the agreement of said trust that said sums so advanced were then and there due and payable to these intervening petitioners and that said debtor trust would reimburse them for the same; that said intervening petitioners have further valid claims against said debtor trust, and said debtor trust is legally indebted and liable to said intervening petitioners for compensation due these intervening petitioners for services performed for and on behalf of said debtor trust and that said debtor trust is further indebted and legally liable to these intervening petitioners for salaries earned, which were due and payable prior to said appointment of receiver and are now due and payable; that none of said sums have been paid to these intervening petitioners, and that they are creditors of said debtor trust for large sums so advanced and earned." It does not contain any brief description of the assets, liabilities, capital stock, and financial condition of the Royalties Company.

The Horns were former trustees of the Royalties Company.

On September 18, 1934, Osborne filed a petition of intervention in which he alleges that the Royalties Company is indebted to him for commissions on the sale of stock in the sum of $4,516.30 in excess of securities held therefor, and that he adopts the allegations of the amended petition of the original petitioners.

The Royalties Company, Hamerick and others by motions challenged the sufficiency of the petition of intervention filed by Horn and others on the ground that the allegations with respect to the claim are so indefinite and uncertain as not to state a cause of action, and that it fails to set forth the financial condition of the Royalties Company as required by section 77 B.

These motions were severally overruled by an order entered on October 24, 1934.

The Royalties Company, Hamerick and others as shareholders also moved the court to discharge Dunlap as temporary trustee on the ground that the court was without jurisdiction to appoint a temporary trustee. This motion was denied by an order entered September 18, 1934.

The movants duly filed a petition in this court praying an appeal from such orders. At a hearing thereon the merits were orally argued and since then written briefs have been filed and the cause submitted.

The appeal is allowed and consolidated with the appeal allowed by us on September 8, 1934.

Subsection (a) of section 77 B (11 US CA § 207 (a), in part reads as follows:

"Three or more creditors who have provable claims against any corporation which amount in the aggregate, in excess of the value of securities held by them, if any, to $1,000 or over may, if such corporation has not filed a petition or answer under this section, file with the court in which such corporation might file a petition under this section, a petition stating that such corporation is insolvent or unable to meet its debts as they mature and, if a prior proceeding in bankruptcy or equity receivership is not pending, that it has committed an act of bankruptcy within four months, that such creditors propose that it shall effect a reorganization; and such corporation shall, within ten days after the service of a copy of such petition upon it, answer such petition. If such answer shall admit (a) the jurisdiction of the court, and (b) the material allegations of the petition, the court shall enter an order approving the petition as properly filed under this section if satisfied that it complies with this section and has been filed in good faith, or dismiss it if not so satisfied. If such answer shall deny any material allegation of the petition, the judge shall determine summarily the issues presented by the pleadings, without the intervention of a jury, and if the material allegations of the petition are sustained by the proofs and the court is satisfied that the petition complies with this section and has been filed in good faith it shall approve the petition; otherwise the court shall dismiss the petition; and if any such petition shall be so approved, the proceedings thereon shall continue with like effect as if the corporation had itself filed a petition or answer under this section."

The amended petitions of intervention filed by Agee and others, Brinstad and others, and Manley and others, and the amended petition filed by Welch and others do not allege an act of bankruptcy within four months, but each of them alleges the pendency of the prior state court receivership. Was it an equity receivership? The grounds alleged for the appointment of a receiver were mismanagement, waste and dissipation of assets, and fraud on the part of the trustees. The receiver was authorized to take possession of all the assets, and the books and records of the Royalties Company, and to enforce and prosecute claims in its favor, to collect moneys due it, and to defend claims and suits against it, and generally to manage, preserve and protect its assets and business. Dissolution or termination of the trust was not contemplated.

■ A court of equity by virtue of its general equitable jurisdiction at a suit of a stockholder on the ground of fraud, mismanagement, waste and dissipation of assets by the corporate officers, may appoint a receiver for the corporation to collect, protect, and preserve its assets and to continue its business, and thereafter, when there has been a change of corporate officers or it appears prudent so to do, may restore its property and affairs to its duly constituted corporate authorities.[2]

■ If we were to consider the Royalties Company as in legal effect a corporate entity, the receivership would be an equity receivership. But the Royalties Company is not a corporation; it is a trust. A court of equity has exclusive jurisdiction over trusts. Pomeroy's Eq. Juris. (4th Ed.) vol. 1, §§ 146-155. Where, due to the acts or omissions of the trustee the trust estate is in danger of misapplication, waste, dissipation or serious loss, a court of equity may appoint a receiver to preserve the trust estate and execute the trust.[3]

■ We conclude that the state court receivership was an equity receivership within the meaning of section 77 B.

■ A stockholder, merely because of his stock ownership in a corporation, is not a creditor of the corporation.[4]

Neither is the trustee the debtor of the cestuis que trust merely because of the trust relationship.[5]

■ But the lawful declaration of a dividend creates a debt against the corporation in favor of each stockholder for the amount of his pro rata share thereof.[6] And if the cor-

[2] Horejs v. American Plumbing & Steam S. Co., 161 Wash. 586, 297 P. 759, 761; Hall v. Nieukirk, 12 Idaho, 33, 85 P. 485, 488, 118 Am. St. Rep. 188; Supreme Sitting of the Order of Iron Hall v. Baker, 134 Ind. 293, 33 N. E. 1128, 1135, 20 L. R. A. 210; In re Lewis, 52 Kan. 660, 35 P. 287, 288, 289; Haywood v. Lincoln Lbr. Co., 64 Wis. 639, 26 N. W. 184, 186; Ashton v. Penfield, 233 Mo. 391, 135 S. W. 938, 946; State v. Shelton, 238 Mo. 281, 142 S. W. 417, 421; Ponca Mill Co. v. Mikesell, 55 Neb. 98, 75 N. W. 46, 47; Culver Lbr. Co. v. Culver, 81 Ark. 102, 99 S. W. 391, 395, 118 Am. St. Rep. 17; Davis v. U. S. Elec. P. & L. Co., 77 Md. 35, 25° A. 982, 984; Gibbs v. Morgan, 9 Iowa, 100, 72 P. 733, 737; Aiken v. Colorado R. Irr. Co. (C. C. Cal.) 72 F. 591; Fletcher's Cyc. Corp. (Perm. Ed.), Vol. 16, § 7688.

[3] Holbrook v. Fyffe, 164 Ky. 435, 175 S. W. 977, 980; Tappan's Ex'r v. Ricamio, 16 N. J. Eq. 89, 92; Cameron v. White, 128 Okl. 251, 262 P. 664, 669; Cook v. Flagg (D. C. N. Y.) 255 F. 195; Ex parte Walker, 25 Ala. 81; Calhoun v. King, 5 Ala. 523; Jones v. Dougherty, 10 Ga. 273; Dougherty v. McDougald, 10 Ga. 121; Skinner v. Maxwell, 66 N. C. 45. See also Rogers v. Rogers, 111 N. Y. 228, 18 N. E. 636; Payne v. Morriss (Va.)

[5] S. E. 568; Burroughs v. Gaither, 65 Md. 171, 7 A. 243, 251; Washington Nat. B. & L. Ass'n v. Buser, 61 W. Va. 590, 57 S. E. 40, 42; Batesville Institute v. Kauffman, 18 Wall. 151, 154, 21 L. Ed. 775.

[4] In re Puget Sound Sav. & Loan Ass'n (D. C. Wash.) 49 F.(2d) 922, 925; Curtis v. Dade County Security Co. (C. C. A. 5) 30 F.(2d) 325, 326; In re Eureka Anthracite Coal Co. (D. C. Ark.) 197 F. 216, 217; Fletcher's Cyc. Corp. (Perm. Ed.) Vol. 13, § 5755.

[5] "The trust is distinguished from a debt in that—

"(a) The trust involves specific subject-matter, whereas the debt does not;

"(b) The trustee's obligations are equitable, while the debtor's are legal;

"(c) The trustee occupies a fiduciary relation, but the debtor does not." Bogert on Trusts, p. 16.

See, also, Guardian Trust Co. v. Studdert (Tex. Civ. App.) 36 S.W.(2d) 578, 582; Thornburg v. Buck, 13 Ind. App. 446, 41 N. E. 85, 86.

[6] Chesapeake & Del. Canal Co. v. United States, 250 U. S. 123, 126, 39 S. Ct. 407, 63 L. Ed. 889; Staats v. Biograph Co. (C. C. A. 2) 236 F. 454, 458, L. R. A. 1917B, 728; New York Trust Co. v. Edwards (D. C. N. Y.) 274 F. 952, 954;

poration becomes insolvent before a declared dividend has been paid or set apart, the stockholders are entitled to share on their dividend debts ratably with other creditors, in the general assets of the corporation.[7]

Whether the trust agreement could validly provide for unconditional payment of dividends, regardless of profits or funds available therefor (see Fletcher's Cyc. Corp. [Perm. Ed.] vol. 11, § 5332; volume 12, § 5445), we need not determine. The certificates and amended declaration of trust do not so provide. The certificates for preferred shares and for class A preferred shares, and paragraphs 14 and 15 of the amended declaration of trust, provide, not for the payment of dividends absolutely, but that certain specified dividends shall be paid thereon before any dividends may be paid on common shares. The certificates also refer to the declaring or ordering of annual rates, indicating they must be declared or ordered by the trustees. Paragraphs 3 and 34 of the amended declaration of trust plainly provide that the declaration and payment of dividends shall rest in the discretion of the trustees.

█ The amended petition of intervention of Agee does not allege the declaration of dividends, and for that reason fails to allege facts showing the petitioners therein are creditors of the Royalties Company. The motion to dismiss that petition should have been sustained.

█ We doubt that the allegations in the amended petition of intervention of Brinstad as to declaration and statements made by the trustees, at the time the petitioners therein purchased their preferred certificates, interpreting the declaration of trust as an unconditional agreement to pay dividends, aid such petition. The provisions of the certificates and amended declaration of trust are clear, specific, and complete as to payment of dividends, and need no interpretation. In our opinion they control. However, such petition alleges that dividends were declared on the class A preferred shares for 1929, 1930, and 1931, and that they remain unpaid.

The amended petition of Welch contains a similar allegation as to unpaid dividends declared on class A preferred shares for 1930, 1931, and 1933, and the allegations of that petition are adopted by the amended petition of intervention of Manley.

█ We conclude that the amended petitions of intervention filed by Brinstad and Manley and the amended petition filed by Welch allege facts which, if true, created the relation of debtor and creditor between the petitioners and intervening petitioners therein and the Royalties Company, and that the motion to dismiss such petitions was properly overruled.

█ The existence of provable claims held by the petitioning creditors, their nature and amount, should be alleged with sufficient particularity and definiteness to enable the court to find from the petition the essential jurisdictional facts.[8]

█ Horn and others in their petition of intervention do not allege the dates when the funds were advanced and paid out, the items paid, whether the alleged contract to repay was oral or in writing, the character of the alleged services or the dates they were rendered, and whether they were rendered pursuant to an oral, written, implied, or express contract. Their intervening petition does not show with sufficient definiteness and particularity that they have valid, existing, and provable claims in the requisite jurisdictional amount. Neither do they allege the financial condition of the Royalties Company, as required by section 77 B. The motion to dismiss such petition should have been sustained.

It will be noted from the provisions of subsection (a) of section 77 B above quoted, that the petition is not to be approved until an answer has been filed admitting the jurisdiction of the court and the material allegations of the petition, or, in the event an answer shall be filed denying any ma-

---

Bulger Block Coal Co. v. United States (Ct. Cl.) 48 F.(2d) 675, 678; Park v. Gilligan (D. C. Ohio) 293 F. 129, 131; Mason v. Routzahn (D. C. Ohio) 8 F.(2d) 56, 58; United States v. Guinzburg (C. C. A. 2) 278 F. 363.

[7] Hunt v. O'Shea, 69 N. H. 600, 45 A. 480; McLaran v. Crescent Planing Mill Co., 117 Mo. App. 40, 93 S. W. 819, 821; Fletcher's Cyc. Corp. (Perm. Ed.) vol. 11, § 5324.

[8] In re St. Lawrence Condensed Milk Corp. (C. C. A. 2) 9 F.(2d) 896; In re Farthing (D. C. N. C.) 202 F. 557, 561, 563; Doty v. Mason (D. C. Fla.) 244 F. 587, 590; In re Lowry & Pike (D. C. Wash.) 294 F. 906, 907; In re Pickering Lbr. Co. (D. C. Mo.) 1 F. Supp. 82, 83; In re Moscovitz (D. C. Fla.) 4 F.(2d) 873.

terial allegation of the petition, until the issues have been determined by the judge.

Subsection (c) of section 77 B (11 US CA §·207 (c) in part reads as follows:

· "Upon approving the petition or answer or at any time thereafter, the judge, in addition to the .jurisdiction and powers elsewhere in this section conferred upon him, (1) may, after hearing upon notice to the debtor and to such others as the judge may determine temporarily continue the debtor in possession or appoint a trustee or trustees of the debtor's estate."

Here no answer either admitting or denying the jurisdiction of the court and the material allegations of the petition has been filed. The petition was not ripe for approval at the time the order appointing the temporary trustee was made, nor has it been so since. It follows that the appointment of Dunlap as temporary trustee was premature and should be rescinded.

The order of October 24, 1934, overruling the motion to dismiss the amended petition of Welch and the amended petitions of intervention of Brinstad and Manley is affirmed, and in all other respects is reversed. The order appointing Dunlap temporary trustee is revoked with instructions to restore the property, assets, books, and records of the Royalties Company to Bryan, receiver.

Appellants and appellees will each pay their own costs in this court. The mandate will issue forthwith, and the appellants may answer the petition and intervening petitions herein held sufficient within ten days after the mandate is filed in the trial court.